Filed 4/25/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MELVIN HAROLD HARRIS, JR., | B251071 |
| Petitioner, | (Los Angeles County Super. Ct. No. MA056288) |
| v. | |
| SUPERIOR COURT OF CALIFORNIA, LOS ANGELES COUNTY, | |
| Respondent; | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. David Walgren, Judge. Petition granted.

The Law Office of Peter Swarth and Peter Swarth for Petitioner.

No appearance for Respondent.

Jackie Lacey, District Attorney, Roberta Schwartz and Ann H. Park, Deputy District Attorneys, for Real Party in Interest.

_____

In this original proceeding, petitioner Melvin Harold Harris, Jr., (Harris), asks this court for relief from denial by respondent Superior Court of the State of California of his nonstatutory motion to dismiss or set aside the information against him. His motion contended that Harris was deprived of his right to the effective assistance of counsel at his preliminary hearing—a substantial right—due to the existence of a conflict of interest between Harris and his attorney. At the time of Harris's preliminary hearing, Gustavo Diaz, Harris's attorney, had himself been arrested and was facing pending felony charges by the same prosecuting entity (the Los Angeles District Attorney) that was prosecuting Harris. Further, the same officer that had arrested Harris, and who was the sole prosecution witness at Harris's preliminary hearing, had also previously arrested Diaz, and therefore was a potential witness in future proceedings against Diaz. These circumstances were unknown to Harris at the time of his preliminary hearing, but were known to Diaz, to the arresting officer, and to the People.

Harris posits that these circumstances gave rise to an actual conflict of interest between himself and his attorney, and that this conflict of interest deprived him of a substantial right at his preliminary hearing—the right to the effective assistance of counsel, uncompromised by a conflict of interest.

By order served November 7, 2013, this court sought opposition to the petition and notified the parties that it was considering the issuance of a peremptory writ in the first instance. (*Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1238; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180.) Having stayed further proceedings in respondent court, we grant the petition as set forth below.

### The Facts and Proceedings

#### *The arrest of Harris's attorney*

On February 2, 2012, Gustavo Diaz, petitioner's attorney, was arrested by Deputy Sheriff Joshua Busch of the Los Angeles County Sheriff's Department, on felony charges regarding a December 19, 2011 incident. On March 6, 2012, a felony complaint was filed against Diaz.

*The charges against Harris*

Harris engaged Diaz as his attorney following his May 19, 2012 arrest, without knowledge of Diaz's arrest or the charges pending against him.

On May 24, 2012, Harris was arraigned on a complaint alleging that on May 19, 2012, he had committed the crimes of possession for sale of a controlled substance (Health & Saf. Code, § 11378), a felony, and maintaining a place for sale of a controlled substance (Health & Saf. Code, § 11366), a felony, along with various special allegations.[1] Represented by Diaz, Harris pleaded not guilty to the charges and denied the special allegations.

Harris was represented by Diaz at his June 8, 2012 preliminary hearing. The arresting officer, Deputy Sheriff Busch, testified on direct examination and was cross-examined concerning the circumstances of Harris's and his father's arrest. Following Busch's testimony, Harris and his father were each held to answer on count one.

On June 22, 2012, the information was filed charging Harris with a violation of Health and Safety Code section 11378. Represented by attorney Diaz, Harris pleaded not guilty to the charge, and denied the special allegations.

*Attorney Diaz's removal as Harris's counsel*

On August 1, 2012, the court removed Diaz as Harris's attorney, and appointed attorney Peter Swarth to represent Harris on an interim basis.[2] Swarth took over as Harris's attorney in this case on or about August 17, 2013. After a number of continuances and waivers of time, Harris's case was set for pretrial conference on June 6, 2013.

---

[1] The complaint charged Harris's father with the same felony offenses.

[2] According to the Petition, the court appointed Swarth as Harris's attorney when Diaz could not be located. The court also entered an OSC re sanctions against attorney Diaz, arising from his unexcused failure to appear on Harris's behalf.

*Harris's motion to dismiss or set aside the information*

On May 23, 2013, Harris filed a nonstatutory motion to dismiss or set aside the information against him in the superior court.[3] Swarth's declaration in support of the motion alleges that when he visited Harris in jail in September 2012, Harris said that Deputy Busch, his arresting officer, had just told him that Busch had previously also arrested attorney Diaz. Swarth promptly requested records from the district attorney concerning Diaz's arrest and any subsequent prosecution. On March 27, 2013, the district attorney's office provided a report of Diaz's February 2, 2012 arrest. A month later Swarth obtained a docket report showing that on December 21, 2012, Diaz had been held to answer on three felony counts and a misdemeanor charge.[4] Based on these facts, the motion alleged that Harris had been deprived of substantial rights, including the right to effective assistance of counsel at his preliminary hearing, due to a conflict of interest with his attorney that was unknown to him, but was known to his attorney and to the People at his preliminary hearing.

The People's written opposition to Harris's trial court motion admitted "the apparent conflict between defendant and his attorney of record, Gustavo Diaz, at defendant's preliminary hearing," consisting of "the fact that the witness at the preliminary hearing also arrested Gustavo Diaz in a separate matter approximately six

---

[3] The People did not contend in the trial court or in this court that Harris's trial court motion (which was filed less than 30 days after Harris's new counsel had received the records relating to Diaz's arrest and prosecution) was untimely. Nor do we find it to have been untimely.

[4] Diaz was charged with theft (Pen. Code, § 487, subd. (a)), embezzlement (Pen. Code, § 504), taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)), felonies, and vandalism (Pen. Code, § 594, subd. (a)), a misdemeanor.

months prior to defendant's preliminary hearing in June of 2012."[5]  However, contending that the conflict of interest was "known only to Gustavo Diaz at the time," the People's opposition argued that the appropriate remedy was to send the case back for a new preliminary hearing, rather than to dismiss the information.[6]  While "strongly object[ing]" to Harris's request to dismiss the information, the opposition to Harris's motion stated that "the People have no objection" to sending the matter back for "a conflict free preliminary hearing" based on the (potential) conflict between Harris and his attorney.

At the trial court's July 11, 2013 hearing on the motion to dismiss, the court, David Walgren, Judge, verified the facts on which the motion was based—that on February 2, 2012, Deputy Busch arrested Diaz for vehicle theft; that on March 6, 2012, the Los Angeles County District Attorney's office filed a felony complaint against Diaz arising from that incident; and that Diaz represented Harris at Harris's June 8, 2012 preliminary hearing, at which Busch testified about Harris's arrest and the facts establishing cause for the charges against him.  The People conceded that these facts, while not necessarily constituting an actual conflict, show "an irregularity, and in the

---

[5] "The People believe that an actual conflict of interest between the defendant and his attorney may have been present at the defendant's preliminary hearing in that the witness who testified against the defendant would also be a potential witness against the defendant's attorney on the attorney's separate felony matter.  Said potential conflict is yet to be demonstrated by competent evidence, and wasn't known to potentially exist until 2013, when current counsel for the defendant asked the People to obtain the original arrest report of Gustavo Diaz from the detective handling the case for the LASD."

[6] The People contended that Harris and Diaz were not being prosecuted by the same office branch of the district attorney's office and there was no evidence that either the trial court, or the deputy district attorney assigned to handle Harris's preliminary hearing, were then aware of the potential conflict.

abstract, it is a conflict."[7]  Confirming that the right to counsel includes the right to representation by an attorney who is free of any conflict of interest, the People explained "that, yes, the appropriate remedy is to have a new preliminary hearing if the defendant so requested, but not a legal dismissal, which would be the equivalent of a 995."  Harris's counsel contended that the conflict of interest shown by the facts entitled Harris to dismissal of the information.

The trial court denied the motion to dismiss the information.  It explained its conclusion that dismissal of the information "is not the appropriate remedy in the pretrial phase when we are in a posture it can be corrected by being referred back to the magistrate," citing the case of *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 (*Pompa-Ortiz*).[8]  Harris's counsel expressly declined to seek remand of the matter for a new preliminary hearing (a remedy the People did not oppose and the court indicated its willingness to grant), confirming that he wanted "the opportunity to explore a writ before I make that choice."

---

[7] The People contended at one point that the facts show only a potential future conflict, not an actual conflict, both because Busch had not yet testified against Diaz at the time of Harris's preliminary hearing, and because all the magistrates in the North District courthouse had been polled and said they could not handle the Diaz matter, resulting in its transfer to the Van Nuys office of the Los Angeles District Attorney.

[8] In *Pompa-Ortiz*, *supra*, the defendant had moved unsuccessfully under section 995 to set aside the information holding him to answer on a charge of rape, among other offenses, based the exclusion of the public from his preliminary hearing.  The Supreme Court rejected the defendant's appeal from his conviction based on the denial of his section 995 motion.  It held that when the denial of a substantial right at a preliminary hearing is followed by the defendant's conviction in an error-free trial, "irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination"—a showing the appellant had not made.  (*Pompa-Ortiz*, *supra*, 27 Cal.3d at p. 529.)  The Supreme Court affirmed the appellant's conviction on that ground without reviewing the relevant question in this matter—whether setting aside the information would be an appropriate remedy when a substantial defect in the preliminary hearing is challenged before trial and conviction.

Recapping the timing of the relevant events:

- February 2, 2012 – Attorney Diaz arrested by Deputy Busch.
- March 6, 2012 – Felony complaint filed against attorney Diaz.
- May 19, 2012 – Harris arrested by Deputy Busch.
- May 24, 2012 – Harris arraigned on felony complaint.
- June 8, 2012 – Harris's preliminary hearing, represented by attorney Diaz.
- June 22, 2012 – Information charges Harris with felonies.
- August 1, 2012 – Diaz removed as Harris's attorney.
- September 2012 – Harris learns that Diaz had also been arrested by Deputy Busch.
- March 27, 2013 – Los Angeles District Attorney produces Diaz arrest report.
- April 26, 2013 – Harris's attorney learns status of proceedings against Diaz.
- May 23, 2013 – Harris files motion to dismiss or set aside the information.
- July 11, 2013 – Trial court hearing on Harris's motion to dismiss or set aside the information.

### *The writ petition*

On September 19, 2013, Harris petitioned for writ relief, asking this court to restrain further proceedings in this case. The writ petition contends that he was denied his federal and state constitutional rights to effective assistance of counsel by the fact that his attorney was acting under a conflict of interest at his preliminary hearing, arising from the fact that at the time Diaz had been arrested by the same officer who arrested Harris, and that when the arresting officer testified at his preliminary hearing, Diaz was being prosecuted on felony charges by the same prosecuting agency—the office of the Los Angeles County District Attorney—that was prosecuting Harris. The petition also argues that the prosecutor's failure to advise Harris of the conflict of interest arising from these facts violated its duties under *Brady v. Maryland* (1963) 373 U.S. 83.

The People's opposition argues that this court should reject the petition, because the information was based on overwhelming evidence of reasonable cause to commit Harris; because there was no actual conflict of interest at Harris's preliminary hearing; because Diaz's performance at Harris's preliminary hearing was not affected by any

7

potential conflict of interest; and because the prosecution had no duty under *Brady v. Maryland*, *supra*, 373 U.S. 83, to disclose the existence of the conflict to Harris.[9]

## Discussion

### 1. Harris was entitled to the effective assistance of conflict-free counsel at his preliminary hearing.

The right of a criminal defendant to the effective assistance of counsel is a substantial right guaranteed by the Sixth Amendment to the United States Constitution and by article I, section 15 of the California Constitution. This constitutionally guaranteed right includes the correlative right to counsel who is free from any conflict of interest that undermines counsel's loyalty to his client's cause. (*People v. Doolin* (2009) 45 Cal.4th 390, 417; *Wood v. Georgia* (1981) 450 U.S. 261, 271 [101 S.Ct. 1097, 67 L.Ed.2d 220].) "As a general proposition, such conflicts 'embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or by his own interests. [Citation.]'" (*People v. Cox* (1991) 53 Cal.3d 618, 653.) If a conflict of interest impedes defense counsel from asserting his client's contentions without fear of consequences to himself or herself, the integrity of the adversary system is cast into doubt because counsel cannot "play[] the role necessary to ensure that the trial is fair." (*Strickland v. Washington* (1984) 466 U.S. 668, 685 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

The right to the effective assistance of conflict-free counsel attaches during the pretrial stage of a proceeding. If a defendant is denied the effective assistance of counsel at the preliminary hearing, a substantial right has been denied. (*People v. Coleman* (1988) 46 Cal.3d 749, 772-773.)

---

[9] On October 16, 2013, this court granted Harris's request for a temporary stay of his trial pending further order. On November 7, 2013, we notified the parties that the court is considering the issuance of a peremptory writ in the first instance. (*Brown, Winfield & Canzoneri, Inc. v. Superior Court*, *supra*, 47 Cal.4th at p. 1238; *Palma v. U.S. Industrial Fasteners, Inc.*, *supra*, 36 Cal.3d at p. 180.)

8

**2. Undisputed facts show a conflict of interest in Diaz's representation of Harris at the preliminary hearing.**

A conflict of interest exists when the attorney owes duties to someone whose interests in the proceeding are adverse to those of his or her client. (*People v. Mroczko* (1983) 35 Cal.3d 86, 104, disapproved on other grounds in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22; *United States v. Allen* (9th Cir. 1987) 831 F.2d 1487, 1496, disapproved on other grounds in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.) In this case, that "someone" is Diaz himself. (*People v. Bonin* (1989) 47 Cal.3d 808, 835 ["Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to . . . his own interests"]; see *Mannhalt v. Reed* (9th Cir. 1988) 847 F.2d 576, 580 [involving conflict between client and lawyer's personal interest].)

The trial court did not articulate a finding that an actual conflict of interest existed between Harris and Diaz at the preliminary hearing; but it confirmed the undisputed facts that give rise to the conflict. Both Harris and his attorney had been arrested by the same arresting officer; while Harris was being prosecuted for felony charges by the Los Angeles District Attorney, the same prosecuting entity was simultaneously prosecuting felony charges against Diaz, Harris's attorney; and the deputy sheriff who arrested Harris, and who testified against him and was subject to his attorney's impeachment and cross-examination at the preliminary hearing (and potentially at trial), was the same officer who had earlier arrested Diaz, and who therefore potentially was also a witness with respect to the charges against Diaz.

These facts give rise to an actual—not merely potential—conflict of interest on the part of Diaz, as the trial court apparently concluded. The court identified the *Pompa-Ortiz* decision as authority for its referral of the case back to the magistrate, "for proceedings free of the charged defects." Because there would be no basis under *Pompa-*

9

*Ortiz* for that remedy unless the preliminary hearing was substantially flawed, the court's identification of that authority implies its conclusion that the conflict existed.[10]

The trial court's implied conclusion that the undisputed facts give rise to a conflict of interest between Harris and his attorney at the preliminary hearing is well supported. The fact that during Harris's preliminary hearing Diaz faced criminal prosecution by the district attorney of Los Angeles County, the same entity that was prosecuting his client, and the fact that Diaz had been arrested by Deputy Sheriff Busch, the same officer who had arrested and was testifying against his client, could reasonably be thought to exert a conscious or unconscious influence on Diaz's own judgment and conduct in representing Harris's interests.

As a criminal defendant, it can reasonably be assumed that Diaz had an interest in maintaining a cordial and cooperative (if not even subservient) relationship with the district attorney's office—a relationship that might be beneficial to Diaz in achieving a favorable disposition of the charges facing him. But Harris had no interest in achieving a beneficial disposition of the charges against Diaz. And Diaz's duties with respect to the charges simultaneously facing Harris almost certainly called for a different—perhaps somewhat less conciliatory and more adversarial—relationship with the prosecutor's office, were it not for his own contrary self-interest.

So too, the fact that Deputy Busch had arrested Diaz a few months before he arrested Harris, and that he was also a potential witness at Diaz's upcoming preliminary hearing and trial, gives rise to additional legitimate concerns about Diaz's ability to vigorously defend Harris's interests. Diaz's representation of Harris's interests involved questioning Deputy Busch at Harris's preliminary hearing and trial. Busch was the officer who had arrested Harris, who was the sole witness at Harris's preliminary hearing, and who very likely was destined to be a central witness at his trial. It was Busch's preliminary hearing testimony that had provided the only evidence justifying the search

---

[10] The People did not actually concede in the trial court the existence of a conflict of interest; they conceded only that the facts alleged by Harris, but not yet established by evidence, would give rise to an "apparent" conflict.

10

of Harris's home, and the only identification of what Busch believed to be the illegal activity that justified the seizure of the evidence and contraband for which he had arrested Harris. The fact that Diaz might well be facing Busch again at his own preliminary hearing and trial gives rise to a reasonable concern about Diaz's ability to put aside his own interests and to objectively exercise the judgment required to impeach a witness's testimony without fear of antagonizing the witness. The potentially conflicting influences on Diaz's relationship with the prosecuting entity, and with Deputy Busch, give rise to a genuine and understandable uncertainty whether Diaz could be depended upon to be wholly uninfluenced and unaffected by his own interests while defending Harris's.

The existence of a conflict of interest does not depend on a finding that the attorney's judgment or conduct actually was affected by the circumstances. "Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are *threatened by* his responsibilities" to the attorney's other interests. (*People v. Bonin*, *supra*, 47 Cal.3d at p. 835, italics added.) It is the *threat* that the attorney's conduct *might* be affected by the conflicting interests that give rise to an actual conflict. Whether the attorney's conduct actually was affected might well be something of which even the attorney is unaware, and could rarely be subject to certainty or proof.

In *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1034, for example, the Court of Appeal held that the attorney was subject to an actual conflict of interest when the attorney was presented with circumstances that *might* reasonably compel him to disclose information, some of which had its source in another client's confidential communications. It is the *potential* that the attorney *might* be forced to choose which of two loyalties he would honor that gives rise to the actual conflict, without proof that the need to make such a choice actually arose. "It is precisely this compromised situation, when the burden of deciding which client to favor is placed solely on the attorney's shoulders and within the attorney's sole power to decide, that [the rule precluding attorney conflicts of interest] is designed to avoid." (*Id.* at p. 1039; see also *People v. Conner* (1983) 34 Cal.3d 141, 148 [Conflict of interest

11

under statute governing disqualification of prosecuting attorneys "exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner"].)  Was some question that might have been pursued in the absence of the conflict left unformulated and unasked?  Was a less authoritative and less inquisitive tone taken due to the attorney's current vulnerabilities?  Were possible plea arrangements unavailable that might otherwise have emerged?  These matters cannot be discerned from any transcript or record, and are likely to be beyond the conscious awareness even of those who have been influenced by the conflict's existence.

The prosecution of a lawyer by the same prosecuting entity that is prosecuting his or her client, "may induce the lawyer to pull his punches in defending his client lest the prosecutor's office be angered by an acquittal and retaliate against the lawyer." (*Thompkins v. Cohen* (3d Cir. 1992) 965 F.2d 330, 332.)  We do not assume that such a fear on the part of Diaz, or such a reaction by him to that fear, would be proper or justified, nor even that it would be likely to occur; "still the defense lawyer may fear it, at least to the extent of tempering the zeal of his defense of his client somewhat."  (*Ibid.*, citing *Wood v. Georgia*, *supra*, 450 U.S. 261, 272.)

Diaz's conflict of interest at Harris's preliminary hearing—where Diaz faced the same prosecuting agency and potentially the same prosecution witness he would soon face at his own preliminary hearing—therefore was an actual conflict, not merely a potential conflict of interest.  The circumstances he actually faced could reasonably be thought to exert an influence (conscious or unconscious) on his decisions (both conscious and subconscious) concerning which of two loyalties—his own or his client's—he would honor.

We are not alone in concluding that an attorney acts under a conflict of interest when both he and his client are simultaneously under indictment and being prosecuted by the same prosecuting entity.  In *State v. Cottle* (2008) 194 N.J. 449, 452, counsel for a number of defendants charged with murder was himself simultaneously (and unknown to his clients) under indictment in the same county for criminal stalking.  The court held that

the attorney had a "per se"—i.e. inherent—conflict of interest.  (*Id.* at p. 452.)  As the court explained, "it is not difficult to imagine that [counsel] might not have had the zeal to engage in a bruising battle with the very prosecutor's office that would be weighing his fate.  Given his own criminal jeopardy and its threat to his professional career, [counsel] surely had no personal incentive—even if it were in his client's best interest—to take on the office that he would need to help him. . . .  [T]he way [to favorable sentence options] would be smooth only with the cooperation and consent of the Prosecutor's Office."  (*Id*. at pp. 464-465.)  It is the circumstances' *potential* impact on the attorney's conduct that gives rise to an *actual* conflict.  The New Jersey Supreme Court concluded that "an attorney who is contemporaneously under indictment in the same county as his client, and being prosecuted by the same prosecutor's office, is engaged in a per se conflict of interest, absent a valid waiver by the client.  In such a circumstance, the representation is rendered ineffective under our State Constitution. . . .  Because [the attorney's] representation of defendant constituted a per se conflict, and because defendant did not waive the conflict, prejudice is presumed.  We therefore are compelled to conclude that defendant has been denied the effective representation of counsel . . . ."  (*Id.* at p. 473.)

The People unpersuasively attempt to distinguish the circumstances that led the court in *State v. Cottle* to conclude that an actual conflict existed.  They argue that Diaz had not yet been indicted or held to answer when he represented Harris at his preliminary hearing; and Deputy Sheriff Busch did not testify at Diaz's later preliminary

13

hearing and trial.[11] But these facts do not eliminate the conflict of interest. They confirm that when Diaz represented Harris at his preliminary hearing, he had been arrested by Deputy Sheriff Busch and was facing prosecution on felony charges by the same prosecuting entity that was prosecuting his client. And the facts confirm that when Diaz represented Harris and cross-examined Busch at Harris's preliminary hearing, he was looking forward to a preliminary hearing and trial of his own, at which he might well face Deputy Busch as a witness. It is the awareness of these circumstances by Diaz, by Busch, and by the district attorney's office the time of Harris's preliminary hearing that gave rise to the conflict of interest.

This sequence of events distinguishes the case at hand from the circumstance in *People v. Pennington* (1991) 228 Cal.App.3d 959. The defendant in that case had been represented at his preliminary hearing by a public defender whose office had previously represented a prosecution witness. The Court of Appeal held that the defendant had not been deprived of a substantial right, because his attorney was unaware of the conflict at the time of the defendant's preliminary hearing, eliminating any possibility that the conflict could have exerted any influence on the defendant's representation. (*Id.* at pp. 965-966.) In this case the sequence of events was reversed. Not only did the conflict of interest actually exist at the time of Harris's preliminary hearing, but Harris's attorney,

---

[11] The People support this argument with lengthy narratives taken from Deputy Busch's incident report purporting to describe the events surrounding Diaz's arrest. The incident report had been attached as an exhibit to Harris's trial court motion, to establish the fact of Diaz's arrest, Busch's status as the arresting officer, and the timing of Harris's awareness of these facts. Because we discern nothing in the report that could establish whether Deputy Busch either would or would not be a material witness in the prosecution against Diaz, however, we need not address whether the report would be admissible for that purpose. The People also rely on references to testimony taken at Diaz's preliminary hearing (apparently about six months after Harris's preliminary hearing was complete), and minute orders reflecting the progress of Diaz's trial, attached as exhibits to the People's Opposition to the petition in this court (without authentication or request for notice). Because the record does not indicate that these documents were before the trial court, and in the absence of relevance to the issues in this proceeding, we decline to consider them. (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 546.)

14

Diaz, was fully aware of the circumstances that gave rise to the conflict. It arose from the then-present potential (of which Diaz was aware, but Harris was not) that the judgments Diaz would exercise in defending Harris might affect his own interests in the future. Whether subsequent events might later have changed the circumstances giving rise to the then-present conflict of interest cannot retroactively negate the conflict's existence—and potential impact—at the earlier time when Harris had needed his attorney's undivided loyalty.

The People argue that the existence of an actual conflict of interest is negated by the fact that Diaz's cross-examination of Deputy Busch at Harris's preliminary hearing seemed to be vigorous (citing examples of perceived concessions in Busch's testimony and points scored by Diaz in argument). (See fn. 11, above.) From this the People urge this court to conclude that Diaz's performance was unaffected by any actual or potential conflict of interest. But, as most courts and attorneys are aware, a court is rarely able to determine in retrospect whether some different approach, tone, or further line of questions, might have been more effective in a witness's cross-examination. It is the attorney, not the court, that is in possession of the knowledge and understanding of the intricacies of his or her client's case, and is in the best position to discover and exploit any weaknesses in the prosecution's case. Moreover, in this case the conflict of interest seems to have had an impact on Diaz's conduct, and probably on the conduct of other participants at Harris's preliminary hearing as well. Diaz's arrest by Deputy Busch and his prosecution by the office of the Los Angeles District Attorney must at that time have been the proverbial 800-pound gorilla in the room, about which only Harris and the court were in the dark.[12] Yet no one disclosed the existence of these facts to Harris—who unquestionably was entitled to know them, and to obtain new counsel—or to the court,

---

[12] The facts underlying the conflict of interest were certainly known to Diaz, and they were known to the office of the Los Angeles District Attorney, the prosecuting entity for both Harris and Diaz, and therefore also to the prosecutor handling Harris's preliminary hearing, at least constructively. They were also known to Deputy Busch, the key prosecution witness who had arrested both Diaz and Harris, and who knew at Harris's preliminary hearing that Diaz was representing Harris.

15

which would have been obligated to inquire into the matter in depth. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 822.)

Far from dispelling the fact that Diaz's personal circumstances constituted an actual conflict of interest, potentially impacting his ability to represent Harris, the People's argument actually confirms the legitimate concern that Diaz's performance at Harris's preliminary hearing might have been affected by his personal circumstances. The People argue that because of his personal situation, "[i]n fact, Attorney Diaz might have been *more confrontational and aggressive* in challenging Deputy Busch opinion [*sic*]" than he would otherwise have been. The People thus agree that Diaz's performance at Harris's preliminary hearing was probably altered in some manner as a result of Diaz's personal situation. That potential—that Diaz's personal circumstances might have affected his judgment and his representation of Harris in some way—is the very definition of an actual conflict of interest with a resulting impact.

Harris was denied the effective assistance of counsel because—unknown to him—his counsel had a material conflict of interest with him at the time of his preliminary hearing, as discussed above. We are unaware of any authority that the deprivation of the effective assistance of counsel is not the denial of a substantial right, nor do the People make that contention.

### 3. Harris's nonstatutory motion to dismiss the information was an appropriate vehicle for his challenge to the preliminary hearing's validity.

Harris's motion in the trial court alleged that the information charging him was invalid because he had been denied a substantial right—the right to the assistance of conflict-free counsel—at his preliminary hearing. He alleged that his counsel had been acting under a conflict of interest at his preliminary hearing, which was not apparent from the preliminary hearing transcript and was unknown to him at the time.

Harris's nonstatutory motion was the appropriate procedural vehicle for his challenge. The denial of a substantial right at the preliminary examination renders the

16

ensuing commitment illegal, entitling defendant to dismissal of the information on timely motion. (*Pompa-Ortiz*, *supra*, 27 Cal.3d at p. 523.) When the error is apparent from the "four corners" of the preliminary hearing transcript, the appropriate motion is brought under Penal Code section 995; when the error is not known and is not reflected in the transcript of the preliminary hearing, it "may be called to the court's attention through a nonstatutory motion to dismiss." (*People v. Duncan* (2000) 78 Cal.App.4th 765, 772; *Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586, 1596; *Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 270 [nonstatutory motion to dismiss the information is appropriate when preliminary hearing record does not show deprivation of rights]; see also *Murgia v. Municipal Court for Bakersfield Judicial Dist.* (1975) 15 Cal.3d 286, 293-294, fn. 4; *People v. McGee* (1977) 19 Cal.3d 948, 967-968; *People v. Superior Court of Alameda County* (1977) 19 Cal.3d 338, 348; *People v. Crudgington* (1979) 88 Cal.App.3d 295, 299 [cases recognize the propriety of a pretrial motion to set aside the information on grounds other than those specified in section 995].)[13] The People do not contend that use of a nonstatutory motion to challenge his preliminary hearing procedure was inappropriate under the circumstances, or that a motion under Penal Code section 995 could have been used.[14]

The times for seeking review of the denial of motion brought under section 995 to set aside the information are subject to statutory limits. (§§ 999a, 1510.) However, there is no statutory limit on the time to petition for review of the denial of a nonstatutory motion to dismiss the information due to denial of rights in the preliminary hearing procedure. (*Lockwood v. Superior Court* (1984) 160 Cal.App.3d 667, 671.) The September 11, 2013 petition, was filed in this court 60 days after the trial court's July 11, 2013 ruling. The People's opposition does not contend that either Harris's trial court

---

[13] Penal Code section 995 provides that "the . . . information shall be set aside," if "before the filing thereof the defendant had not been legally committed by a magistrate." (Pen. Code, § 995, subd. (a)(2)(A).)

[14] Further statutory references are to the Penal Code unless otherwise specified.

17

motion or the petition in this court was untimely, or that the petition should not be reviewed on its merits. Harris's nonstatutory motion was timely filed, and is the appropriate procedural vehicle to raise these issues.

### 4. Counsel's conflict of interest at Harris's preliminary hearing requires dismissal of the information without an affirmative showing of prejudice.

Harris's motion in the trial court sought dismissal of the information, the remedy that section 995 mandates for the deprivation of substantial rights at the preliminary hearing stage of the proceedings. (§ 995, subd. (a)(2)(A).) In the trial court, the People acknowledged "the apparent conflict between defendant and his attorney of record" at the preliminary hearing.

Setting aside the information is the required remedy when the defendant is denied the conflict-free assistance of counsel—a substantial right—at the preliminary hearing. That was the Supreme Court's holding 54 years ago in *People v. Elliot* (1960) 54 Cal.2d 498: "[W]here it appears that, during the course of the preliminary examination, the defendant has been denied a substantial right, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion." (*Id.* at p. 503; see *People v. Napthaly* (1895) 105 Cal. 641, 644-645 [failure to advise defendant of right to counsel at preliminary hearing renders commitment illegal, requiring that information be set aside].)

The rule stated in the *People v. Elliot* decision, requiring that the information must be set aside when the defendant is deprived of substantial rights at his or her preliminary hearing, was reaffirmed in 1980, when the Supreme Court reconsidered and overruled another portion of the *People v. Elliot* decision in *Pompa-Ortiz*, *supra*, 27 Cal.3d 519. In *Pompa-Ortiz*, the court limited the application of *People v. Elliot*, holding that the earlier decision had too broadly assigned the automatic-dismissal remedy to errors of insubstantial magnitude.

But in *Pompa-Ortiz* the Supreme Court expressly reaffirmed the rule of the *People v. Elliot* decision, that the right to relief—setting aside the information without any affirmative showing of prejudice—would continue to be available when the challenge is made before the defendant has been tried or convicted. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 139; see also *People v. Konow* (2004) 32 Cal.4th 995, 1025 [trial court properly set aside information without showing of prejudice, where magistrate had deprived defendant of substantial right at preliminary hearing].) When the issue is raised in the trial court before the defendant's conviction, a challenge to counsel's conflict of interest does not depend on a showing that conflict-free counsel would have obtained a better result. (*Pompa-Ortiz*, *supra*, 27 Cal.4th at p. 529 [If the issue is raised before trial, prejudice is presumed]; *People v. Booker* (2011) 51 Cal.4th 141, 157 ["the need for a showing of prejudice depends on the stage of the proceedings at which a defendant raises the claim in a reviewing court"]; see also *Cuyler v. Sullivan* (1980) 446 U.S. 335, 348 [in order to establish constitutionally ineffective assistance of counsel based upon an alleged conflict of interest, "a defendant *who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance," italics added]; *United States v. Balzano* (7th Cir. 1990) 916 F.2d 1273, 1293 [same]; *United States v. Barnes* (7th Cir. 1990) 909 F.2d 1059, 1065 [same].)[15]

It is true that recent decisions have narrowed the rule that no prejudice need be shown to justify dismissal of the information for error at the preliminary hearing, in a number of respects. In *Reilly v. Superior Court* (2013) 57 Cal.4th 641, the court explained that the *Pompa-Ortiz* rule—though valid—does not mean that if the error is raised before trial, materiality is always presumed and dismissal of the information is

---

[15] In *United States v. Balzano*, *supra*, 916 F.2d at page 1293, the trial court was aware before the trial that the defendant's attorney was under investigation for federal criminal activities, and had conducted an investigation and hearing to determine whether he should be discharged. Because the defendant had advised the trial court that he wanted to retain his attorney after being advised of the conflict, the issue had not been raised in the trial court. The Court of Appeal held that therefore the defendant's challenge on appeal could succeed only if he could demonstrate that the alleged conflict of interest had adversely affected his lawyer's performance.

19

always required.  Irregularities in preliminary hearing procedures that do not deprive the defendant of a substantial right require a showing of prejudice to justify relief.  (*Reilly v. Superior Court*, *supra*, 57 Cal.4th at p. 653.)  And when it is unclear whether the right that was denied was substantial, the determination requires a showing that the error might reasonably have affected the hearing's outcome.  (*People v. Standish* (2006) 38 Cal.4th 858, 863, 882 [dismissal of the information is required only if error might reasonably have affected outcome of that hearing]; *People v. Konow, supra,* 32 Cal.4th at pp. 1004-1005 [same].)  However, the court also explained that "we do not mean that the defendant must demonstrate that it is reasonably *probable* he or she would not have been held to answer in the absence of the error"; only that "the error is not minor but 'reasonably *might* have affected the outcome' in the particular case."  (*People v. Standish*, *supra*, 38 Cal.4th at pp. 882-883, original italics [because failure to release defendant on own recognizance was not denial of a substantial right, showing of prejudice would be required]; *People v. Konow*, *supra*, 32 Cal.4th at p. 1024 [trial court may set aside information on basis of magistrate's "erroneous and prejudicial" failure to consider statutory right to dismiss complaint in furtherance of justice].)

The rule set forth in *Pompa-Ortiz* held that some showing of prejudice would be required for *post-conviction* relief from error at the preliminary hearing stage of the proceedings:  "Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination."  (*Id.* at p. 528; *People v. Letner and Tobin*, *supra*, 50 Cal.4th at p. 139.)  But that limitation applies only where the preliminary hearing procedures are challenged after the defendant's conviction.  As *Pompa-Ortiz* makes clear, the rule requiring a showing of prejudice does not apply when the denial of a substantial right at the preliminary hearing stage of the proceedings is challenged before the defendant's trial and conviction.  When the challenge is made before the defendant's trial and conviction, the rule remains the information must be set aside without any affirmative showing of

20

prejudice. If the issue is raised before trial, the court reaffirmed in *Pompa-Ortiz*, "prejudice is presumed and the information is dismissed" without any affirmative showing. (*Pompa-Ortiz*, *supra*, 27 Cal.3d at pp. 529, 530.) That rule applies here, because Harris brought his motion to dismiss the information based on his failure to receive effective assistance of conflict-free counsel, and pursued the matter in his petition to this court, before he faced trial or conviction.

In the trial court, the People opposed dismissal of the information, suggesting instead that the appropriate remedy would be to remand the matter for a new preliminary hearing, which "would not be the result of a legal dismissal of the information, but would be based on a conflict of interest known only to Gustavo Diaz at the time." Under the reasoning of the *Pompa-Ortiz* decision, the People argued, "the proper course to take, even absent the writ procedure, is to return the matter to a magistrate for a new preliminary hearing"—to which the People would have no objection. But "[t]he People would strongly object to a legal dismissal prior to any new hearing on the matter." The trial court agreed, concluding that setting aside the information "is not the appropriate remedy in this pretrial phase when we are in a posture it can be corrected by being referred back to the magistrate." Faced with the unwillingness of Harris's counsel to agree to remand for a new preliminary hearing instead of the remedy of setting aside the information, the trial court denied Harris's motion.

Harris's petition in this court seeks a writ restraining the superior court "from holding further proceedings" on the pending information against him. Notably, the People's opposition does not repeat its trial court contention that dismissal of the information is not an appropriate remedy for a conflict of interest at the preliminary hearing, and it does not suggest any other remedy that would be appropriate for that circumstance (nor do the People indicate how it would be possible to have a new

21

preliminary hearing without first setting aside the existing information, as the People had sought and the trial court had suggested).[16]

## Conclusion

In the preceding sections of this decision we have concluded that the preliminary hearing is a critical stage of the prosecution, which is validly conducted only when the defendant is afforded the effective assistance of counsel.  (Cal. Const., art. I, § 14; *Coleman v. Alabama* (1970) 399 U.S. 1, 9-10 [90 S.Ct. 1999, 26 L.Ed.2d 387, 396-397].)  A valid preliminary hearing is a prerequisite to the filing of an information.  (§ 738.)  Because Harris's preliminary hearing did not meet constitutionally required standards, the information must be set aside.[17]

## Disposition

The petition for writ of prohibition is granted.  Respondent court is ordered to dismiss the information and is restrained from further proceedings in Los Angeles County Superior Court case No. MA056288, consistent with this opinion.

TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.             MILLER, J.[*]

---

[16] Because we grant the petition on other grounds, we do not address whether the prosecution had a duty under *Brady v. Maryland*, *supra*, 373 U.S. 83, to advise Harris of Diaz's arrest and prosecution.

[17] Neither the petition nor the opposition addressed what future procedures may (or may not) become appropriate with respect to the prosecution of Harris on the charges for which he was arrested, nor did the trial court purport to determine those potential issues.  We express no opinion on them.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.