Filed 10/30/24  P. v. Rabiee CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C096779 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF180000729) |
| v. | |
| HAMID RABIEE, | |
| Defendant and Appellant. | |

A jury found defendant Hamid Rabiee, a neurologist, guilty of multiple counts of criminal sexual misconduct with his patients, including sexual exploitation of a patient under Business and Professions Code section 729.  During the trial, 19 patients testified to the charged offenses and 5 others testified to similar uncharged offenses.

Defendant contends the trial court prejudicially erred in two ways:  (1) by reading a pattern jury instruction on the uncharged evidence and (2) by refusing to modify the instruction on the sexual exploitation charges.  Defendant also contends his court-appointed counsel (counsel) rendered ineffective assistance in two ways:  (1) by failing to

1

adequately impeach the patients and (2) by having a conflict of interest with defendant. We find no merit in these contentions and affirm. We order the trial court to correct six clerical errors in the abstract of judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2022, defendant was tried on 63 counts of sexual misconduct with his patients. The counts included sexual battery (Pen. Code, § 243.4), sexual exploitation of a patient (Bus. & Prof. Code, § 729), false imprisonment (Pen. Code, § 236), genital penetration (Pen. Code, § 289, subd. (a)(1)), and elder abuse (Pen. Code, § 368). Nineteen patients testified that defendant committed one or more of the charged offenses with them. Specifically, they testified that defendant: (1) touched, pressed, rubbed, or brushed his groin against their buttocks; (2) touched their breasts or stomach; (3) embraced them or pressed his body against theirs; or (4) touched, squeezed, or penetrated their vaginal area with his hand or fingers.

Five other patients testified that defendant committed similar uncharged sexual offenses with them. Before each of these five testimonies, the prosecutor noted their uncharged nature.

Counsel cross-examined each patient. He established that some of them filed civil lawsuits against defendant based on the same conduct and that many of them did not report defendant's conduct until they heard media coverage of complaints against him. He questioned the accuracy of the patients' memories and testimonies and their certainty that something improper or unlawful had occurred. He confirmed that the door to his exam room, where the misconduct purportedly occurred, was unlocked and unobstructed and questioned whether the patients saw defendant wearing a stethoscope or carrying a reflex hammer in his pockets. And he established that some of the patients returned to defendant for additional appointments after the alleged misconduct.

Defendant also took the stand and denied touching any patient with the intent of sexual arousal. He described why each testifying patient came to him, how many visits

2

they had, and whether they started seeing another neurologist besides him. He also testified that he typically kept a reflex hammer in one pocket and a stethoscope in the other and affirmed that "[i]f someone were to come in contact with [his] body," they might feel those objects. And he explained that people with a psychiatric disorder, a stroke in the frontal lobe, or multiple sclerosis might confabulate, or fill in missing memories, with what they hear in the news.

The trial court read several instructions to the jury, including CALCRIM No. 1191A (the 1191A instruction) and a special instruction on the sexual exploitation charges (the exploitation instruction). The court denied defendant's request to modify the exploitation instruction.

The jury found defendant guilty on all 63 counts,[1] and the court sentenced defendant to 27 years, 8 months in prison.

Defendant timely appealed. He challenges the 1191A instruction, the exploitation instruction, and two aspects of counsel's performance. We address his jury instruction challenges first.

DISCUSSION

I

*Jury Instructions*

A.    The 1191A Instruction

The 1191A instruction is a pattern jury instruction that explains the proper use of uncharged evidence admitted under Evidence Code section 1108. Evidence Code section 1108 allows the prosecution in a sexual offense case to admit evidence of the defendant's prior uncharged sexual offenses. (Evid. Code, § 1108, subd. (a).) Such evidence is "admitted only as *circumstantial evidence* supporting an *inference* that the defendant

---

[1] The jury acquitted defendant of one count of false imprisonment by violence but found him guilty of the lesser included offense of misdemeanor false imprisonment.

3

committed the charged offense, by demonstrating the defendant's propensity and bolstering the victim's credibility." (*People v. Cottone* (2013) 57 Cal.4th 269, 287.)

The 1191A instruction tells the jury, as it did here, that it can consider the uncharged sexual evidence only if the prosecution has proven the uncharged crimes by a preponderance of the evidence. If so proven, the jury can conclude that the defendant was disposed or inclined to commit sexual offenses and that the defendant was likely to commit and did commit the charged sexual offenses. The conclusion that the defendant committed an uncharged offense is only one factor for the jury to consider and is insufficient by itself to prove the charged offenses, which must be proven beyond a reasonable doubt.

Relying on certain concurring and dissenting opinions discussed below, defendant contends the trial court committed prejudicial error, and violated his due process rights, when it read the 1191A instruction because the instruction confused the jury, causing it to find defendant guilty under a lesser standard of proof than reasonable doubt.[2] We disagree.

Our Supreme Court rejected this argument in the context of a materially similar jury instruction in *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1016, and defendant provides no basis for us to depart from that holding. (*People v. Panighetti* (2023) 95 Cal.App.5th 978, 998-999.) Nothing in the 1191A instruction authorizes a jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination of whether the defendant committed an uncharged sex crime. (*Reliford,* at p. 1016.) And defendant fails to convince us that the jury must have been confused by

---

[2] The headings in defendant's briefs challenge only the 1191A instruction. To the extent defendant also seeks to challenge the court's reading of CALCRIM No. 375, we consider that challenge forfeited for failure to clearly identify it in a heading. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

4

the instruction either as a general matter or because of the sheer number of witnesses in this case. Absent evidence to the contrary, we presume that "jurors can grasp their duty [stated in the instructions] to apply the preponderance-of-the-evidence standard to the preliminary fact identified in the instruction and to apply the reasonable-doubt standard for all other determinations." (*Reliford,* at p. 1016; *People v. Forrest* (2017) 7 Cal.App.5th 1074, 1083.) Defendant provides no evidence suggesting that the jury misunderstood or failed to follow the 1191A instruction.

Defendant's reliance on Justice Corrigan's concurring and dissenting opinion in *People v. Villatoro* (2012) 54 Cal.4th 1152 and Justice Perren's concurring opinion in *People v. Gonzales* (2017) 16 Cal.App.5th 494 is unpersuasive. Those opinions do not undermine the binding effect of *Reliford*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Nor do they apply here. Justice Corrigan's opinion concerned the use of *charged* crimes to prove propensity, not *uncharged* crimes like the evidence here. (*Villatoro,* at pp. 1169, 1172 [conc. & dis. opn. of Corrigan, J.].) And Justice Perren's opinion concerned a victim's testimony as to both charged and uncharged offenses. (*Gonzales*, at p. 506 [conc. opn. of Perren, J.].) Defendant's contention that "some of the uncharged conduct testimony came from the very witnesses who testified regarding the charged conduct" is forfeited due to lack of record citations. (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 ["Statements of fact that are not supported by references to the record are disregarded by the reviewing court"].) For these reasons, we find no merit in defendant's challenge to the 1191A instruction.

B.      The Exploitation Instruction

Business and Professions Code section 729 (section 729) makes it a crime for a doctor to sexually exploit a patient. Such exploitation occurs when the doctor engages in an act of sexual intercourse, sodomy, oral copulation, or sexual contact with a patient. (§ 729, subd. (a).) There is no crime, though, if the touching is within the scope of

5

medical examination and treatment unless it is done for sexual gratification purposes. (§ 729, subd. (b).)

Here, the jury was instructed that the prosecution needed to prove three elements to show that defendant violated section 729: (1) defendant was a physician, (2) he engaged in an act of sexual contact with a patient, and (3) the act was for the purpose of sexual arousal, sexual gratification, or sexual abuse. The instruction stated an additional proviso specifying that defendant was not guilty of sexual exploitation "unless the touching [was] outside the scope of medical examination and treatment." The court denied defendant's request to convert the additional proviso into a fourth element of the crime. Defendant contends the court erred by rejecting his request, but we conclude that he fails to demonstrate error.

We disregard defendant's undeveloped contention that the additional proviso reflects a fourth element of a section 729 violation. Defendant states that this proviso "was not merely an affirmative defense, but a requisite element of the charged crimes," but he does not support that statement with authority or analysis. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [we disregard conclusory arguments].) Case law on whether a proviso in a criminal statute is an element to be proved by the prosecution or an affirmative defense to be proved by the defendant is plentiful but not cited or analyzed by defendant. (*People v. Henley* (1999) 72 Cal.App.4th 555, 563 [discussing cases].) We do not conduct such analysis on his behalf. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985.)

The remainder of defendant's argument appears to be that the proviso should have better pinpointed defendant's trial theory. But counsel suggested only moving the proviso, not rewording it. The trial court is not required to provide a pinpoint instruction that is not requested. (*People v. Jones* (2014) 223 Cal.App.4th 995, 1001; see, e.g.

*People v. Matthews* (1994) 25 Cal.App.4th 89, 98-99 [trial court erred when it refused to give the defendant's special instruction].)

II

*Ineffective Assistance of Counsel*

Defendant contends counsel rendered ineffective assistance by failing to adequately cross-examine the patients and by having a conflict of interest with defendant during the trial.  To prevail on these claims, defendant must establish two elements: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  If he fails to establish one element, we need not address the other.  (*Id*. at p. 697.)  We begin with defendant's cross-examination claim.

A.     Patient Cross-Examination

Defendant contends counsel provided ineffective assistance by failing to impeach the credibility of defendant's patients with two items:  their medical records and a compilation of the media reports related to defendant's case.  As we will explain, defendant fails to establish that counsel's performance was deficient.

1.     Additional Background

During a break in defendant's testimony, counsel explained to the court that defendant had prepared a video showing various media headlines concerning his case. Counsel asked the court to admit the video during defendant's testimony because most of the "complaining witnesses . . . came through the media," thereby raising questions regarding their credibility.  But counsel admitted that defendant would not be able to say which headline or article compelled which patient to come forward.  The court deemed the video inadmissible under Evidence Code section 352, finding it to be too misleading without the foundational piece specifying what a particular patient saw or heard.

During another break in defendant's testimony, counsel offered several exhibits containing the medical records of most of the testifying patients.  The court rejected

7

defendant's broad characterization of the records as non-hearsay business records and concluded it would have to go through each record to determine admissibility. Counsel opted against such an approach, choosing instead to have defendant refer to the records during his testimony to refresh his recollection.

2.     Analysis

When examining an ineffective assistance of counsel claim, a reviewing court defers to counsel's reasonable tactical decisions because there is no single right way to try a case. (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *People v. Riel* (2000) 22 Cal.4th 1153, 1177.) Such tactical decisions include cross-examination and impeachment of witnesses. (*People v. Cleveland* (2004) 32 Cal.4th 704, 746; *People v. Frierson* (1979) 25 Cal.3d 142, 158.) The failure to impeach a witness seldom establishes counsel's incompetence because a reviewing court is "rarely able to determine in retrospect whether some different approach, tone, or further line of questions, might have been more effective." (*Harris v. Superior Court* (2014) 225 Cal.App.4th 1129, 1143 (*Harris*).) In addition, a reviewing court "cannot evaluate alleged deficiencies in counsel's representation solely on [a] defendant's unsubstantiated speculation." (*People v. Cox* (1991) 53 Cal.3d 618, 622.)

These principles defeat counsel's impeachment-based contentions. Although defendant claims that the medical records would have shown that some patients were taking medication that affected their memories, he does not back that claim with supporting evidence. (*People v. Bolin* (1998) 18 Cal.4th 297, 334 [such claims must be supported by declarations establishing the substance of the omitted evidence].) The same is true of defendant's media coverage assertion. Defendant does not cite to any examples of the media coverage in this case, including whether that coverage provided details that the patients potentially adopted as their own version of the events. In sum, defendant's impeachment-based contentions amount to unsubstantiated speculation that we cannot evaluate.

8

Those contentions also fail when we consider the tactical basis for counsel's cross-examination choices. Defendant grounds his tactical arguments on counsel's purported misunderstanding of hearsay rules during his direct examination of defendant, but his ineffective assistance claim is not based on counsel's hearsay expertise or his examination of defendant. Rather, defendant's claim is that counsel "failed to use [the medical records and media reports] to impeach each [patient's] testimony during cross-examination." A review of the record supplies more than one tactical reason for counsel's decision not to probe the patients regarding their medical records or the media they saw or heard before coming forward. For example, counsel may have concluded that such cross-examination would be counter-productive by making the patients appear more sympathetic and risking damaging redirect examination. (See *People v. Freeman* (1994) 8 Cal.4th 450, 513 [sympathy]; *People v. Cleveland, supra*, 32 Cal.4th 704, 747 [damaging redirect].) Or he may have concluded that he sufficiently undermined the patients' credibility. Through cross-examination, he questioned the accuracy of their memories and whether they may have been mistaken or confused. And he established that media coverage prompted most of them to come forward and that some were also suing defendant in civil cases. Counsel was in the best position to assess the effectiveness of his lines of questioning before the jury, and defendant does not convince us that this is one of those rare cases where we should second-guess trial counsel. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1140.)

B. Conflict of Interest

1. Additional Background

After seven patients testified, counsel learned he was being investigated by the State Bar of California (the State Bar) based on a complaint that he worked on defendant's case while serving as a certified law student for the Shasta County District Attorney's office. After defendant disclosed the complaint to the trial court, the court asked a county public defender to advise defendant regarding the potential conflict.

Counsel admitted that he "interned at the DA's office . . . post-Bar," but also testified that he did not "lift[] a finger on [defendant's] case" in that capacity. Both defendant and the prosecution orally waived any conflict.

After several other witnesses testified, the county public defender informed the court of Business and Professions Code section 6131, which prohibits a district attorney or other public prosecutor who prosecutes, aids, or promotes an action in court from later assisting in the defense of that action. (Bus. & Prof. Code, § 6131, subd. (b).) Violation of that statute is a misdemeanor and requires disbarment. (Bus. & Prof. Code, § 6131.) The county public defender "wanted to make sure that the court was aware of the statute."

The prosecution argued that counsel was not in violation of Business and Professions Code section 6131. After receiving advice from the California Judges Association's ethics hotline, the court stated it was comfortable with proceeding with counsel. Counsel agreed, and the prosecution filed a written waiver of any conflict.

2.      Analysis

Defendant contends he was denied the right to effective assistance because his counsel had an interest in maintaining a cordial relationship with the prosecution due to counsel's potential violation of Business and Professions Code section 6131. We disagree.

In the context of a conflict-of-interest claim, the deficient performance prong of the ineffective assistance test " 'is satisfied by a showing that defense counsel labored under an actual conflict of interest.' " (*People v. Almanza* (2015) 233 Cal.App.4th 990, 1001.) An actual conflict exists when defense counsel has been arrested and is facing prosecution by the same entity prosecuting his client, particularly when the same arresting officer is an important prosecution witness in both cases. (*Harris, supra*, 225 Cal.App.4th at p. 1142.) An actual conflict also exists when the defendant shows that the purported conflict adversely affected counsel's performance. (*Almanza*, at

10

p. 1001.) A defendant demonstrates such an effect when " 'the record shows that counsel "pulled his punches," ' " meaning he " 'failed to represent defendant as vigorously as he might have had there been no conflict.' " (*People v. Rundle* (2008) 43 Cal.4th 76, 169.)

Here, defendant fails to show that counsel labored under an actual conflict of interest. His attempt to analogize counsel's situation to that of the defense attorney in *Harris* is unpersuasive. There, the attorney representing the defendant at a preliminary hearing had been arrested and was facing felony charges brought by the same office that was prosecuting the defendant. (*Harris, supra*, 225 Cal.App.4th at pp. 1133, 1139.) Also, the arresting officer was the sole prosecution witness at the defendant's preliminary hearing and was a potential witness in proceedings against the attorney. (*Id*. at p. 1139.) By contrast, there is no indication that defendant was facing criminal charges under Business and Professions Code section 6131; in fact, the prosecution rejected that provision as a valid concern. Nor is there any indication of crossover in the witnesses between defendant's case and counsel's purported conflict.

Defendant's attempt to show that counsel had an actual conflict because it adversely affected counsel's performance fares no better. Defendant contends that counsel "pulled his punches" by failing to object to the 1191A instruction. But, as explained above, such an objection would have been meritless, and failure to raise a meritless objection is not ineffective assistance of counsel. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

According to defendant, counsel also "pulled his punches" by failing to adequately cross-examine the patients. This contention is grounded in the moment that counsel learned of the State Bar investigation: according to defendant, counsel's awareness of the investigation gave counsel an interest in maintaining a cordial and cooperative relationship with the prosecution. But counsel learned of the investigation after he had already cross-examined several patients, and defendant does not contend, nor does the record indicate, that counsel's cross-examination approach changed after he became

11

aware of the investigation.  Moreover, defendant's cross-examination concern is the same ineffective assistance concern we considered and rejected above.  As explained, the record shows tactical reasons for counsel's cross-examination choices.  (See *People v. Cox* (2003) 30 Cal.4th 916, 949 [when the record does not reflect an attorney's omission, we examine the record to determine whether there may have been tactical reasons that might have caused the attorney's omission].)

### III

*Errors in the Abstract of Judgment*

There are six errors in the abstract of judgment that require correction to reflect the proper counts and the oral pronouncement of defendant's sentence.  The required corrections are:  (1) the sentence for count 22 is a consecutive eight-month term, not a stayed two-year term; (2) count 36 must be added to the abstract with a consecutive eight-month term; (3) the conviction on count 46 is for a violation of Penal Code section 289, subdivision (d)(4), not Business and Professions Code section 729; (4) the sentence for count 49 is a consecutive one-year term, not eight months; (5) the conviction on count 49 is for a violation of Penal Code section 243.4, subdivision (a), not Penal Code section 243.4, subdivision (c); and (6) the sentence for count 52 is a stayed three-year term, not a one-year consecutive term.  We direct the trial court to prepare a corrected abstract of judgment.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188.)

12

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare an abstract of judgment correcting the six errors enumerated in section III and forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


/s/
MESIWALA, J.


We concur:


/s/
ROBIE, Acting P. J.


/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13