Filed 6/23/15  P. v. See CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MOUSENG SEE,<br><br>Defendant and Appellant. | F067147<br><br>(Super. Ct. No. VCF249209)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In March 2011, appellant Mouseng See, who is a documented gang member, fired two shots at a police officer while running from him. As relevant to this appeal, a jury convicted him in count 1 of attempted premeditated murder (Penal Code, §§ 187, subd. (a), 664, subds. (e), (f))[1] and in count 2 of assault with a semiautomatic firearm (§ 245, subd. (d)(2)), finding true the gang enhancements (§ 186.22, subd. (b)) in both counts. In addition, the jury convicted appellant in count 4 of carrying a loaded firearm (§ 12031, subd. (a)(1)), and found true that he did so as an active participant of a criminal street gang (§ 12031, subd. (a)(2)(C)), resulting in a felony conviction.

On appeal, appellant raises seven issues: First, he contends the trial court erred by failing to consider the merits of his pretrial motion wherein he sought to strike the gang enhancements in counts 1 and 2.

Second, he argues the trial court breached its sua sponte duty to provide a gang limiting instruction to the jury. In the alternative, he alleges his trial counsel rendered ineffective assistance for not seeking such an instruction.

Third, he maintains the jury instructions and verdict for count 1 did not require the jury to find the necessary elements beyond a reasonable doubt for his conviction under section 664, subdivisions (e) and (f).

Fourth, he asserts insufficient evidence supports the jury's verdict in count 1 that (1) he had the specific intent to kill and/or (2) he premeditated or acted with deliberation.

Fifth, he contends insufficient evidence supports the finding of the gang enhancements under section 186.22, subdivision (b), for counts 1 and 2.

Sixth, he argues the evidence is insufficient in count 4 to support a felony conviction. Respondent agrees.

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

2.

Seventh, before trial, the trial court conducted an in camera review of the officer's personnel file, and he asks this court to conduct an independent review of that process. Respondent does not object.

Finally, he maintains he was improperly sentenced under the gang enhancements pursuant to section 186.22, subdivision (b)(5).

We agree insufficient evidence exists for the gang enhancements in counts 1 and 2. We also agree the evidence is insufficient in count 4 to support a felony conviction. However, we determine the trial court did not abuse its discretion regarding the in camera review, and we find appellant's remaining arguments unpersuasive. We affirm but remand for resentencing. In light of the remand, we will not address appellant's final concern regarding his sentencing under section 186.22, subdivision (b)(5).

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.     The shooting.**

In the early morning hours of March 3, 2011, Lindsay Police Officer Andrew Robinson activated his emergency lights in his marked patrol vehicle and attempted to stop a vehicle driven by appellant, who failed to yield and sped away. After a brief high speed chase, appellant pulled to the side of the road and Robinson stopped about 20 feet behind. Appellant exited holding a handgun so Robinson drew his weapon and ordered appellant to stop or he would shoot. Appellant immediately started running diagonally away and fired twice at Robinson while running. The shots occurred approximately two to three seconds after Robinson told him to stop, and the shots were fired a second or two apart. Robinson saw the gun pointed directly at him and saw "a perfectly round muzzle flash." Robinson was "100 percent" certain appellant pointed his gun directly at him when the shots were fired. Appellant kept the gun raised for both shots as he ran, holding his arm out in a 90-degree perpendicular fashion. Appellant did not look at Robinson as he fired. At trial, Robinson testified appellant fired his first shot about 30 yards away, and the second shot was fired between 30 to 50 yards away.

3.

Robinson returned two shots at appellant, who ran into a nearby orchard. Neither Robinson nor appellant were struck. Robinson radioed for assistance and after other officers arrived the area was searched and appellant was discovered inside an SUV parked at a nearby residence.

Appellant was taken into custody and, when asked about the location of his gun, he stated it was "in the grove." However, officers located a handgun with four live rounds underneath the SUV's seat, and appellant's fingerprint was later discovered and identified on this gun's magazine. Two shell casings fired from this gun were located approximately 39 and 119 feet, respectively, from Robinson's patrol vehicle. Appellant's two casings were approximately 78 feet apart from each other.

Appellant was searched and .07 grams of methamphetamine were found inside his sock.

**2.     The gang evidence.**

Officer Daniel Ford of the Visalia Police Department testified as the prosecution's gang expert. Ford explained that Oriental Troop gang members often have tattoos such as "LP" (Lahu Pride), "MBS" (Mongolian Boys Society), "OT" and five dots. The Oriental Troops have two subsets, including the Mongolian Society.

The primary activities of the Oriental Troops gang include homicide, attempted murder, assault with a deadly weapon, shooting at inhabited dwellings, narcotics sales, narcotics transportation, robberies, carjackings, and vehicle theft. Ford noted that Oriental Troop gang members commonly worked both in groups and alone. He explained that it is very common for its members to carry guns, but the gang had a very specific rule that prohibited a member to carry a gun with a round chambered. Oriental Troops members often keep their gang-related items or tattoos on the left side of their bodies.

Ford investigated a June 2010 incident where an Oriental Troop gang member shot at a police officer in Visalia. That gang member was convicted of attempted murder and

4.

gang affiliation. Ford explained that such a shooting earned respect for the Oriental Troops gang because its member was willing to take on law enforcement.

Appellant had gang-related tattoos, including five dots on his left cheek, five dots on his chest, and five dots on the left web of his hand, which represented either the letter "O" or Asian Gang Pride. He wore an "LP" on his chest, which represented Lahu Pride. He also had "MBS" tattooed on his left wrist, which represented the Mongolian Boys Society. Appellant's gang moniker was "Monster."

During the incident with Robinson, appellant did not make any gang signs or symbols. He wore black pants and a black hooded sweatshirt, and he wore his hood up during the encounter so that Robinson could only see a partial side of appellant's face. Appellant was wearing blue shorts under his black sweatpants and a folded blue bandana was discovered inside the left pocket of the blue shorts. After the shooting, appellant's home was searched and drawings were located that depicted gang symbols. Ford opined the drawings showed loyalty to the Mongolian Boys Society, the Lahu Pride Crips and the Oriental Troops.

Ford testified that during prior contacts with law enforcement, appellant admitted being a member in the Lahu Pride Crips, the Mongolian Boy Society, and the Oriental Troops, and he confirmed his moniker was "Monster." Appellant was contacted in the company of other Oriental Troop gang members and he wore gang clothing. In jail classification forms, appellant admitted associating with gangs. Based upon his contacts and review, Ford opined appellant was an active participant in the Oriental Troops gang.

The prosecutor asked Ford a hypothetical that mirrored the events between appellant and Robinson. Based on the hypothetical, Ford opined appellant's crime was committed for the benefit of and in association of a criminal street gang.

**3.     The Information.**

In an amended information, the Tulare County District Attorney charged appellant as follows:

5.

Count 1, attempted premeditated murder of a peace officer (§§ 187, subd. (a), 664, subds. (e), (f)). It was further alleged appellant personally used, and personally and intentionally discharged, a firearm (§ 12022.53, subds. (b), (c)), rendering the count 1 offense a "serious" and "violent" felony (§ 667.5, subd. (c)(8), § 1192.7, subd. (c)(8)). A gang enhancement was also alleged as to count 1 (§ 186.22, subd. (b)(1)(C));

Count 2, assault on a peace officer with a semiautomatic firearm (§ 245, subd. (d)(2)). It was further alleged appellant personally used, and personally and intentionally discharged, a firearm (§ 12022.53, subds. (b), (c)), rendering the count 2 offense a "serious" and "violent" felony (§ 667.5, subd. (c)(8), § 1192.7, subd. (c)(8)). A gang enhancement was also alleged as to count 2 (§ 186.22, subd. (b)(1)(C));

Count 3, possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a));

Count 4, carrying a loaded firearm (§ 12031, subd. (a)(1)). As to count 4, it was further alleged that appellant was an active participant in a criminal street gang (§ 12031, subd. (a)(2)(C));

Count 5, misdemeanor resisting a peace officer (§ 148, subd. (a)(1)); and

Count 6, misdemeanor evading a peace officer (§ 2800.1, subd. (a)).

**4.     The Verdicts and Sentencing.**

The jury convicted appellant of all counts and found true all enhancements and special allegations.

For count 1, the trial court sentenced appellant to serve 45 years to life in prison calculated as follows: 15 years to life with the possibility of parole on count 1; 20 years for the section 12022.53, subdivision (c) enhancement; and 10 years for the section 186.22, subdivision (b)(1)(C), enhancement.

For count 2, appellant was sentenced to seven years, plus 20 years for the section 12022.53, subdivision (c), enhancement plus 10 years for the section 186.22, subdivision

6.

(b)(1)(C) enhancement.  The court stayed the sentence on count 2 pursuant to section 654.

For counts 3 and 4, appellant was sentenced to two years to run concurrently with count 1.  For counts 5 and 6, appellant was sentenced to 365 days in custody to run concurrently with count 1.

## DISCUSSION

**I.     The Trial Court Did Not Violate Due Process When It Denied Appellant's Motion To Strike The Gang Allegations.**

Appellant contends the trial court erred by failing to consider the merits of his pretrial motion to dismiss the gang allegations for evidentiary insufficiency.  He asserts he was denied due process requiring reversal of his convictions.

**A.     Background.**

The preliminary hearing occurred in July 2011.  At its conclusion, appellant's defense counsel argued, in part, no facts supported a street gang allegation under section 186.22.  Defense counsel noted appellant only intended to run away from Robinson and was not assisting or furthering gang conduct.  The trial court held appellant to answer on the charges.

In July 2011, the information was filed alleging, in part, the gang enhancement in count 1 and in August 2011, appellant filed a section 995 motion (the August 2011 Motion) to set aside, in part, count 1 and its gang enhancement.  Appellant argued there were no facts, other than his past record and past gang associations, to support the alleged gang enhancement.  The trial court denied the August 2011 Motion following a hearing, determining, in part, sufficient evidence existed from the preliminary hearing to justify the gang enhancement.

In November 2011, the prosecution filed a first amended information, which contained the same allegations as the original information but added a count for assault on a peace officer under section 245, subdivision (d)(2).  This new charge became count

7.

2 in the amended information, and it set forth the same gang enhancement under section 186.22, subdivision (b)(1), that appeared in count 1 of both the original and the amended information. Following the filing of the amended information, defense counsel indicated in court he would file another motion pursuant to section 995.

Criminal proceedings were suspended under section 1368 and then resumed on January 10, 2013, after appellant was deemed competent to stand trial. The trial date was set for February 25, 2013, and the court ordered that February 19, 2013, was the last day to hear any properly noticed dispositive motions.

On February 15, 2013, appellant's defense counsel filed a motion to strike the gang allegations in counts 1 and 2 (the February 2013 Motion). At the hearing on February 19, the court noted appellant had filed the February 2013 Motion late and the prosecution had not received a copy until just then. The court asked if this issue had been raised previously either at the preliminary hearing or a motion pursuant to section 995. Appellant's defense counsel admitted that this specific issue, whether sufficient evidence supported the gang allegation, had been addressed and denied in a prior section 995 motion. Defense counsel, however, argued a motion to strike could be made at any time and did not need to be a noticed motion.

The prosecutor argued this same issue was heard and denied in August 2011 and objected to the defense's use of "semantics" to raise the issue again. The prosecutor asserted the defense was precluded from bringing the same motion absent new information.

The trial court ordered the prosecution to file a written response, and the prosecutor asked the court to take judicial notice of its previous ruling on the section 995 motion in August 2011, as well as the prosecution's prior opposition to the same issue raised then.

8.

On February 22, 2013, the prosecution filed an opposition, contending the February 2013 Motion was barred absent a showing of changed circumstances. It was also asserted the motion was meritless.

On February 25, 2013, the trial court tentatively denied the February 2013 Motion because it was untimely, not properly noticed, and had been ruled upon previously by the magistrate (at the preliminary hearing) and at the previous hearing on the section 995 motion. The trial court noted the defense was challenging the same evidence it had already challenged twice before. The trial court stated defense counsel could file a motion pursuant to section 1118.1 at the close of the prosecution's case.

The trial court noted it had read all of the defense's motion and it gave the parties a final opportunity to argue the matter. The court denied the motion after both parties submitted it without further oral argument.

**B.      Standard of review.**

Pursuant to section 995, an information may be set aside when the defendant has been committed without reasonable or probable cause. (§ 995, subd. (a)(2)(B).) A defendant may use a section 995 motion to set aside the entire information, individual charges, or specific enhancements. (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 845-846; *Ervin v. Superior Court of Contra Costa County* (1981) 119 Cal.App.3d 78, 85.) Section 997 authorizes a section 995 motion prior to trial.

When reviewing the trial court's ruling on a 995 motion, an appellant court conducts an independent review of the evidence. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 654.) An information will not be set aside "'if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' [Citation.]" (*Ibid.*)

Section 995 is not the exclusive authority for setting aside an information. (*Harris v. Superior Court* (2014) 225 Cal.App.4th 1129, 1144 (*Harris*).) A nonstatutory motion to dismiss is permissible in certain circumstances and is the appropriate mechanism to

9.

challenge an alleged error that is not reflected in the preliminary hearing transcript and which might require an evidentiary hearing. (*Ibid.*; *People v. Duncan* (2000) 78 Cal.App.4th 765, 772; *Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 271.) In contrast, a motion under section 995 is appropriate where the preliminary hearing transcript contains the alleged error entitling the defendant to dismissal of the information. (*Harris, supra,* 225 Cal.App.4th at p. 1144.)

C.      Analysis.

Appellant contends his right to due process was violated when the trial court refused to rule on the merits of his February 2013 Motion. He also argues the trial court's actions violated section 997, which authorizes a section 995 motion prior to trial and "trumps" conflicting local or Judicial Council rules.

This record does not establish a due process violation. The goal of procedural due process is to give a party the right to be heard "'"at a meaningful time and in a meaningful manner."' [Citation.]" (*City of Tulare v. Superior Court* (2008) 169 Cal.App.4th 373, 383.) Here, appellant challenged the gang enhancement evidence in his August 2011 Motion, which was fully briefed, argued and ruled upon. After the August 2011 Motion was denied, it was appellant's right to file a motion for reconsideration based on a showing of new or different facts, circumstances, or law. (Code Civ. Proc., § 1008.) This record is devoid of such a motion for reconsideration. Moreover, appellant's present appeal does not challenge the denial of his August 2011 Motion.

Appellant's February 2013 Motion, like his August 2011 Motion, challenged the sufficiency of the evidence stemming from the preliminary hearing transcript. Thus, section 995 was the proper authority for the February 2013 Motion, which was improperly filed as a nonstatutory motion to strike. (*Harris, supra,* 225 Cal.App.4th at p. 1144; *People v. Duncan, supra,* 78 Cal.App.4th at p. 772; *Stanton v. Superior Court, supra,* 193 Cal.App.3d at p. 271.) Absent changed circumstances, appellant was not entitled to another section 995 motion regarding the same allegations. (*People v. Sherwin*

10.

(2000) 82 Cal.App.4th 1404, 1411 (*Sherwin*); *In re Kowalski* (1971) 21 Cal.App.3d 67, 70 (*Kowalski*) [second judge erred by considering renewed § 995 motion without any showing of changed circumstances].)  Appellant has not established any changed circumstances justifying a renewed motion.

Respondent argues the trial court properly declined to address the merits of the February 2013 Motion because it was a "renewed" motion under section 995 and identical to the August 2011 Motion.  Although there is some merit to this argument, respondent's position is not entirely correct because the prosecution filed an amended information after the August 2011 Motion was denied.  As such, appellant had the right to file another motion pursuant to section 995 to challenge the sufficiency of the preliminary hearing evidence supporting the new count appearing therein, i.e., section 245, subdivision (d)(2).  Without changed circumstances, however, appellant was not entitled to challenge those remaining portions of the information which fell under the denial of the August 2011 Motion.  (*Sherwin, supra,* 82 Cal.App.4th at p. 1411; *Kowalski, supra,* 21 Cal.App.3d at p. 70.)

Regarding a challenge to the gang enhancements, appellant's February 2013 Motion was no different substantively than his August 2011 Motion.  In both motions, appellant raised the same argument that "the record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang." (Underscoring omitted.)  In the August 2011 Motion, appellant cited *People v. Ochoa* (2009) 179 Cal.App.4th 650 (*Ochoa*) for this proposition.  In his February 2013 Motion, he cited *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*) for the same proposition, a case he did not cite in the August 2011 Motion.  Both *Ramon* and *Ochoa* stand for the same legal proposition a gang expert's testimony is insufficient alone to support a criminal gang enhancement under section 186.22, subdivision (b).  (*Ochoa, supra,* 179

11.

Cal.App.4th at p. 657; *Ramon, supra,* 175 Cal.App.4th at p. 853.) During oral arguments for the August 2011 Motion, appellant's defense counsel emphasized *Ochoa* and noted the only gang evidence came from Ford's opinion testimony and nothing from appellant's actions.

The factual basis for the gang enhancement in count 2 was no different from the facts supporting the gang enhancement in count 1. Based on this record, appellant did not suffer a due process violation when the trial court summarily rejected his February 2013 Motion because the validity of the gang enhancement had been fully briefed, argued and decided in 2011.[2]

### 1.    Appellant cannot establish prejudice.

Assuming the trial court erred in failing to reach the merits of the February 2013 Motion, appellant cannot establish prejudice. He contends a structural error occurred, requiring automatic reversal because he was deprived of a ruling on the merits to strike the gang allegations. He asserts his trial then resulted in an abundance of inflammatory and damaging gang evidence. These arguments are without merit because the trial court issued a ruling in 2011 regarding the validity of the same evidence for the gang enhancement in count 1. Appellant never challenged that ruling. Thus, a structural error did not occur requiring automatic reversal. (*People v. Flood* (1998) 18 Cal.4th 470, 500 [a structural error occurs in a very limited class of cases and is a defect affecting the framework within which the trial proceeds and not just simply an error in the trial process itself].)

In the alternative, appellant seeks reversal under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*), claiming the due process error was not harmless beyond a reasonable doubt. He maintains the lengthy and detailed gang testimony had no

---

**2**    Because appellant cannot establish a due process violation, we will not address his contention that section 997 trumps any conflicting local or Judicial Council rules.

12.

legitimate purpose in his trial because the gang allegations were not justified, noting gang evidence is inherently inflammatory. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229.) These arguments and his reliance on *Albarran* are without merit. As discussed above, a due process violation did not occur.

Moreover, appellant has failed to demonstrate the trial court would have granted the February 2013 Motion on its merits, even if it had been heard. (*People v. Arjon* (2004) 119 Cal.App.4th 185, 192 (*Arjon*).) The court had already ruled the gang evidence was admissible relevant to the enhancement in count 1. The gang evidence was identical for the enhancements in counts 1 and 2. As such, appellant has failed to show the jury heard inflammatory gang evidence it would have otherwise not heard had count 2's enhancement been dismissed prior to trial.

In addition, count 3 in the original information alleged a felony violation of section 12031, subdivision (a)(1), and further alleged that appellant was an active participant in a street gang pursuant to section 12031, subdivision (a)(2)(C). Appellant did not seek to dismiss this count in his August 2011 Motion. After the information was amended, this allegation became count 4, which appellant did not seek to strike in his February 2013 Motion. Thus, the jury would have heard evidence of appellant's gang participation even if the judge had ruled on the merits of the February 2013 Motion.

Because appellant never challenged the court's denial of the August 2011 Motion, he has failed to show prejudice stemming from the court's denial of the February 2013 Motion. It is beyond a reasonable doubt the gang evidence at trial would have been the same even if the trial court had reached the merits of the February 2013 Motion. Accordingly, appellant cannot establish prejudice and he is not entitled to reversal. (*Arjon, supra,* 119 Cal.App.4th at p. 192 [prejudicial error must be established stemming from the denial of a motion under § 995].)

13.

## II. The Trial Court Did Not Violate Due Process Regarding A Gang Limiting Instruction.

Appellant argues the trial court had a sua sponte duty to instruct the jury with CALCRIM No. 1403 because gang evidence dominated the trial.[3] He contends the trial court's failure rendered the trial fundamentally unfair and violated due process. In the alternative, appellant maintains his defense counsel rendered ineffective assistance by not seeking this limiting instruction.

### A. Background.

During closing arguments, appellant's trial counsel argued Robinson's testimony was not believable. He suggested Robinson made up facts to justify an officer involved shooting. Defense counsel urged the jury to disregard the gang evidence as inapplicable, contending this was not a gang case. He argued there was no basis for any gang allegation against appellant because Ford's opinion had no validity since it was not based

---

[3] CALCRIM No. 1403 states:

"You may consider evidence of gang activity only for the limited purpose of deciding whether: [¶] [The defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related (crime[s]/ [and] enhancement[s]/ [and] special circumstance allegations) charged(;/.)][¶] [OR]

"[The defendant had a motive to commit the crime[s] charged(;/.)][¶] [OR]

"[The defendant actually believed in the need to defend (himself/herself)(;/.)] [¶] [OR] [¶] [The defendant acted in the heat of passion(;/.)] [¶] [OR]

"[_____ <insert other reason court admitted gang evidence>.]

"[You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied on by an expert witness in reaching his or her opinion.]

"You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that (he/she) has a disposition to commit crime."

on the facts of the case. Defense counsel told the jury to find Ford's opinion testimony irrelevant because it was based on incorrect information.

## B.     Standard of review.

### 1.     Limiting instructions.

Upon request, a trial court should give a limiting instruction regarding gang membership evidence but it does not have a sua sponte obligation to do so. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 (*Hernandez*); *People v. Jones* (2003) 30 Cal.4th 1084, 1116.) A narrow exception to this rule exists in a few extraordinary cases where evidence of past offenses dominates part of the evidence against the defendant, and such evidence is both highly prejudicial and minimally relevant to any legitimate purpose. (*Hernandez, supra,* 33 Cal.4th at pp. 1051-1052.) Such an extraordinary case, however, does not include where the gang evidence is relevant to a gang enhancement, which provides a legitimate purpose for the jury to consider it. (*Id.* at p. 1052.)

### 2.     Ineffective assistance of counsel.

A defendant bears the burden of proving ineffective assistance of counsel. (*People v. Vines* (2011) 51 Cal.4th 830, 875 (*Vines*).) Counsel's performance must be both deficient and have caused prejudice. (*Ibid.*) To reverse a conviction, the appellate record must affirmatively disclose defense counsel had no rational tactical purpose for his or her act or omission. (*Id.* at p. 876.) "If the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected,"' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*Ibid.*)

15.

### C. Analysis.

#### 1. The trial court had no sua sponte duty to provide a limiting instruction.

Appellant asserts his case was extraordinary because the gang evidence dominated the trial. He contends the trial court had a sua sponte duty to provide a limiting instruction. However, appellant's contentions are without merit because this evidence was relevant to the gang enhancements. As such, the jury had a legitimate purpose to consider it and appellant's case falls under the general rule that the trial court had no sua sponte duty to provide a limiting instruction regarding the gang evidence. (*Hernandez, supra,* 33 Cal.4th at p. 1052.)

#### 2. Appellant's defense counsel did not render ineffective assistance.

Appellant contends his defense counsel rendered ineffective assistance for not requesting a limiting instruction regarding the gang evidence. He asserts no reasonable tactical explanation exists for his trial counsel's failure, which fell below an objective standard of reasonableness.

These contentions are unpersuasive because a reasonable attorney may tactically conclude a limiting instruction might be riskier than whatever "'questionable benefits'" such an instruction might provide. (*Hernandez, supra,* 33 Cal.4th at p. 1053.) Here, the defense theory at trial was that Robinson gave false statements regarding the incident with appellant and the events which Robinson described did not occur. Defense counsel maintained no basis existed for the gang allegations, arguing to the jury the gang evidence was not applicable and did not matter. Defense counsel also told the jury that Ford's opinion testimony was irrelevant because it was based on incorrect information.

Based on the closing arguments, appellant has failed to establish defense counsel had no rational tactical purpose for not requesting a jury instruction under CALCRIM No. 1403. To the contrary, it was the defense theory that Robinson's trial testimony was false, the gang allegations had no basis, and the gang allegations did not matter. Defense

16.

counsel attempted to move the jury's attention away from the gang evidence and, instead, focused on discrediting Robinson. Requesting CALCRIM No. 1403 would have emphasized the gang evidence, and that instruction invited the jury to consider such evidence as a motivating factor for appellant to commit the charged crimes.

Appellant's claim must be rejected because defense counsel was not asked for an explanation regarding his actions and the record establishes a satisfactory explanation. (*Vines, supra,* 51 Cal.4th at p. 876.) Appellant's claim of ineffective assistance is more appropriate for a habeas corpus proceeding. (*Ibid.*) Appellant has failed to establish that his defense counsel's performance was deficient. (*Ibid.*)

### 3. Appellant cannot establish prejudice.

In a claim of ineffective assistance of counsel, the defendant bears the burden to establish there is a reasonable probability the result of the proceeding would have been different absent counsel's error. (*Vines, supra,* 51 Cal.4th at p. 876.) Here, even if defense counsel erred, appellant cannot establish prejudice.

Appellant fled from Robinson, both while driving his vehicle and then on foot despite Robinson activating his vehicle's emergency lights and later ordering him to stop. Appellant exited his vehicle with a loaded handgun drawn and ready, which he used to fire at Robinson twice. Robinson saw the gun pointed directly at him and saw "a perfectly round muzzle flash." He had no doubt appellant's gun was pointed directly at him.

Upon being taken into custody, appellant's gun was found with four live rounds and his fingerprint was discovered and identified on the gun's magazine. The two shell casings fired from appellant's gun were located approximately 39 and 119 feet from Robinson's patrol vehicle. .07 grams of methamphetamine were found inside appellant's sock.

17.

Based on the overwhelming evidence of appellant's guilt as to counts 1 through 6, it is not reasonably probable the result would have been different had defense counsel requested an instruction under CALCRIM No. 1403. (*Vines, supra,* 51 Cal.4th at p. 876.) There is no suggestion anyone stated appellant should be found guilty because he was a bad person. (*Hernandez, supra,* 33 Cal.4th at p. 1054.) Despite appellant's arguments to the contrary, the trial was neither "unreliable" nor "fundamentally unfair" due to defense counsel's failure to act. (*In re Avena* (1996) 12 Cal.4th 694, 721 [test for prejudice is not solely one of outcome determination and must examine whether counsel's deficient performance resulted in a trial "unreliable" or "fundamentally unfair"].)

Appellant, however, contends the issue of prejudice should be analyzed under the *Chapman* standard because a due process violation occurred resulting in an abundance of gang evidence in his trial. As discussed earlier, this contention is without merit because appellant's due process rights were not violated. Appellant is not entitled to reverse his convictions due to a failure to instruct the jury using CALCRIM No. 1403.

## III. The Instructions And Verdicts For Count 1 Did Not Violate Appellant's rights.

Appellant argues the verdict form and jury instructions for count 1 were inadequate. He asserts his due process and jury trial rights were violated, requiring reversal.

### A. Background.

#### 1. The amended information.

The amended information alleged in count 1 as follows:

"On or about March 3, 2011, in the County of Tulare, the crime of ATTEMPTED MURDER OF A PEACE OFFICER, in violation of PENAL CODE SECTION 66/4/187(A) [*sic*], a FELONY, was committed by MOUSENG SEE, who did unlawfully attempt to murder OFFICER ROBINSON, who was a PEACE OFFICER, engaged in the performance of duty and this was known, and reasonably should have been known, by the DEFENDANT.

18.

"It is further alleged, within the meaning of Penal Code section 664(e) and (f), that the above offense was willful, deliberate and premeditated."

## 2. The relevant jury instructions.

Prior to the commencement of trial, the court discussed with counsel the proposed jury instructions and verdict forms which the prosecution had submitted. The court asked defense counsel to review them and provide any objections before the close of business the next day. No such objection appears in this record. After the parties rested, and before closing arguments, the trial court asked if the defense had any other jury instructions, and appellant's trial counsel indicated he did not.

When instructing the jury, the trial court read CALCRIM No. 200 and advised the jury to consider the jury instructions together. CALCRIM No. 220 was read and the jury was informed that appellant was presumed innocent and the prosecution was required to prove him guilty beyond a reasonable doubt.

When specifically discussing count 1, the trial court read to the jury the following relevant portions of CALCRIM Nos. 600, 601 and 602:

"The defendant is charged in Count 1 with attempted murder. To prove that the defendant is guilty of attempted murder the People must prove that 1, the defendant took a direct but ineffective step toward killing another person. And 2, the defendant intended to kill that person. [¶]...[¶]

"If you find the defendant guilty of attempted murder under Count 1, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully and with deliberation and premeditation. The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully considered the considerations for and against his choice and knowing the consequences decided to kill. The defendant premeditated if he decided to kill before acting. [¶]...[¶]

"The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden you must find this allegation has not been proved.

"If you find the defendant guilty of attempted murder on Count 1 you must then decide whether the People have proved the additional allegation that he intended to murder a peace officer.

"To prove this allegation the People must prove that 1, Officer Robinson was a peace officer lawfully performing his duties as a police officer.

"And 2, when the defendant attempted the murder, the defendant knew or reasonably should have known that Officer Robinson was a peace officer who was performing his duties."

### 3. The verdict form for count 1.

Regarding count 1, the verdict form asked the jury to do the following:

First, to find appellant guilty or not guilty "as charged in Count 1 of the Information, of ATTEMPTED MURDER, in violation of Penal Code section[s] 664/187(a), victim being Officer Robinson."

Second, to find as true or not true whether "the attempted murder was WILLFUL, DELIBERATE, PREMEDITATED, within the meaning of Penal Code section 664(e) and (f)."

Third, to find as true or not true whether "the defendant attempted to murder a PEACE OFFICER, with in [*sic*] the meaning of Penal Code section 664(e) and (f)."

Fourth, to find as true or not true whether "the defendant personally and intentionally discharged a firearm, with in [*sic*] the meaning of Penal Code section[] 12022.53(c)."

Finally, to find as true or not true whether "the above offense was committed for the benefit of or in association with a criminal street gang, with in [*sic*] the meaning of Penal Code section 186.22(b)(1)(C)."

### B. Standard of review.

On appeal, the wording of a jury instruction is reviewed de novo and we determine whether the instructions were complete and correctly stated the law. (*People v. Bell* (2009) 179 Cal.App.4th 428, 435.) When reviewing the correctness of jury instructions,

20.

we review the trial court's "entire charge" and not merely parts of instructions or a particular instruction. (*People v. Bolin* (1998) 18 Cal.4th 297, 328 (*Bolin*).) A jury instruction is not prejudicial if the necessary elements are contained in two instructions rather than in one. (*Ibid.*) Essential elements missing in one instruction may be provided by another instruction or cured when the instructions are viewed as a whole. (*Ibid.*; accord *People v. Burgener* (1986) 41 Cal.3d 505, 538-539 [jury instruction not defective where reasonable doubt was not defined in conjunction with express malice but the definition was given elsewhere], disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 756.)

On appeal, we presume the jury followed the trial court's oral instructions and those written instructions that are clearly readable. (*People v. Hardy* (1992) 2 Cal.4th 86, 208.)

**C.    Analysis.**

Appellant argues there were no jury findings (1) of premeditated attempted murder upon a peace officer or (2) that he knew, or reasonably should have known, Officer Robinson was a peace officer engaged in the performance of his duties. He asserts the lack of these findings violated the Sixth and Fourteenth Amendments. He maintains the jury instructions and verdict form for count 1 were "divorced" from section 664, subdivisions (e) and (f), so that the jury instructions "improperly scrambled the offense and premeditation allegation."

There is a dispute between the parties regarding whether appellant has forfeited or waived these issues on appeal by not challenging the sufficiency of the jury instructions or the verdict form in the lower court. We need not resolve this dispute because, when we presume no waiver or forfeiture occurred, appellant's arguments are unpersuasive on the merits.

Except in a felony case in which the jurors are in doubt regarding the legal effect of the facts proved, the jury must render a general verdict. (§ 1150.) "A general verdict

21.

upon a plea of not guilty is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the accusatory pleading." (§ 1151.) The verdict's form is immaterial so long as it expresses the intention to convict the defendant for the crime charged. (*People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272.) A verdict does not need to enumerate each element of a particular charge or enhancement so long as the jury was instructed on the required elements. (*People v. Lobato* (2003) 109 Cal.App.4th 762, 767.)

Section 664, subdivision (e), mandates a defendant shall be punished in the state prison for life with the possibility of parole for an attempted murder committed upon a peace officer so long as the defendant knew or reasonably should have known the victim was a peace officer engaged in the performance of his or her duties. Section 664, subdivision (f), mandates a defendant shall be imprisoned in state prison for 15 years to life if the elements in subdivision (e) are proven and it is also found true that the attempted murder was willful, deliberate, and premeditated.

Here, the jury was instructed that appellant was presumed innocent and conviction of count 1 (and all of the counts) required proof beyond a reasonable doubt. The jury was instructed on the elements of section 664, subdivisions (e) and (f), including that the prosecution had to prove Robinson was a peace officer lawfully performing his duties, and appellant "knew or reasonably should have known" Robinson was a peace officer who was performing his duties when the attempted murder occurred. The jury was also instructed regarding the definitions of willfulness, deliberation and premeditation. The jury instructions regarding count 1 were complete and correctly stated the law. It is presumed the jury understood and followed the trial court's instructions. (*People v. Hardy, supra,* 2 Cal.4th at p. 208.)

The jury found appellant guilty of attempted murder of Robinson in violation of sections 664 and 187, found true the attempted murder was "willful, deliberate, premeditated" and found true appellant attempted to murder a peace officer within the

22.

meaning of section 664, subdivisions (e) and (f). Given the totality of the record, appellant's arguments are without merit the jury instructions failed to require the prosecution to prove, and the jury to find, the attempted murder elements beyond a reasonable doubt. Likewise, his contentions are unpersuasive there were no jury findings of premeditated attempted murder upon a peace officer, or that the jury did not find he knew or reasonably should have known Robinson was a peace officer engaged in the performance of his duties. The jury instructions and verdict form for count 1 were not "divorced" from section 664, subdivisions (e) and (f), as he asserts, and the trial court did not improperly scramble the offense and premeditation allegations.

Appellant's reliance on *Alleyne v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2151] (*Alleyne*) and *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) is misplaced.

In *Apprendi, supra,* 530 U.S. 466, the Supreme Court held that the federal Constitution requires a jury to find the existence of every element of a sentence enhancement beyond a reasonable doubt if it increases the penalty beyond the prescribed *maximum* statutory punishment. (*Apprendi, supra,* 530 U.S. at p. 490.) In *Alleyne,* the Supreme Court affirmed its holding in *Apprendi* and held facts that increase a mandatory *minimum* sentence must also be submitted to the jury. (*Alleyne, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2163].) However, neither *Apprendi* nor *Alleyne* requires a verdict form to expressly detail every element of an enhancement. (*Alleyne, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2163]; *Apprendi, supra,* 530 U.S. at p. 490; see *People v. Lobato, supra,* 109 Cal.App.4th at p. 767.) Instead, the "facts" must be submitted to the jury, which must find them beyond a reasonable doubt. (*Alleyne, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2163]; *Apprendi, supra,* 530 U.S. at p. 490.)

After reviewing *Apprendi*, our Supreme Court stated that, except for a sentence enhancement that is based on a defendant's prior conviction, a jury must find, beyond a reasonable doubt, the existence of every element of a sentence enhancement if it

23.

increases the crime's penalty beyond the statutory maximum. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326.) *Sengpadychith* held a federal constitutional error occurs where a trial court fails to instruct the jury on an element of a sentence enhancement (other than one for a prior conviction) when the penalty is extended beyond the statutory maximum. (*Ibid.*)

Here, the jury was instructed on all elements of the charge constituting count 1, including the sentence enhancements under section 664, subdivisions (e) and (f). These facts were submitted to the jury to determine whether appellant was guilty beyond a reasonable doubt. Having been instructed on the elements of section 664, subdivisions (e) and (f), it is presumed the jury made the findings as instructed when it found true those enhancements. As such, despite appellant's arguments to the contrary, the trial court did not improperly impose a sentence without the requisite findings by the jury as required under *Alleyne* and *Apprendi*. Accordingly, appellant's claim of error fails. (*People v. Lobato, supra,* 109 Cal.App.4th at p. 767.)

## IV.    Sufficient Evidence Establishes Appellant Had Specific Intent To Kill Along With Premeditation.

Appellant argues the evidence was insufficient to prove he intended to kill, or that he premeditated and deliberated. He asserts his due process rights were violated, requiring reversal of his conviction for attempted murder.

### A.    Standard of review.

On appeal, we review the entire record in the light most favorable to the judgment to determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on "'evidence that is reasonable, credible, and of solid value.'" (*People v. Jones* (2013) 57 Cal.4th 899, 960.) In doing this review, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after

viewing the evidence favorably for the prosecution. (*Ibid*.) We are to presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment. (*Ibid*.)

### B. Analysis.

#### 1. Intent to kill.

For a defendant to be convicted of attempted murder, the prosecution must prove the defendant had a specific intent to kill and the defendant committed a direct but ineffectual act toward accomplishing the intended killing. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*); see §§ 187, subd. (a), 664.) The mental state required for attempted murder is different from that required for murder itself, which does not require the intent to kill because implied malice—a conscious disregard for life—is sufficient. (*Smith, supra,* at p. 739.) As such, for appellant to be convicted of the attempted murder of Robinson, the prosecution had to prove he acted with specific intent to kill Robinson. (*Ibid.*)

"[A]n intent unlawfully to kill" and "express malice" are essentially the same concepts. (*People v. Saille* (1991) 54 Cal.3d 1103, 1114.) To be guilty of attempted murder of Robinson, appellant had to harbor express malice toward him. (*Smith, supra,* 37 Cal.4th at p. 739.) Express malice requires a showing that appellant either desired Robinson's death or knew to a substantial certainty that death would occur. (*Ibid.*)

Neither murder nor attempted murder requires proof of motive. (*Smith, supra,* 37 Cal.4th at p. 740.) However, "evidence of motive is often probative of intent to kill." (*Id.* at p. 741.) It is also well established that the defendant's actions and the circumstances of the case can be used to infer the mental state required to convict the defendant of attempted murder. (*Ibid.*)

The act of firing a gun toward a victim at a close, but not point blank, range is sufficient to support an inference of intent to kill where the shot could have inflicted a mortal wound had the shot been on target. (*Smith, supra,* 37 Cal.4th at p. 741.) In

25.

addition, the fact that the victim may have lived because of the defendant's poor marksmanship does not establish a less culpable state of mind. (*Ibid.*)

Here, appellant's shell casings were 39 and 119 feet, respectively, from Robinson's patrol vehicle. The location of appellant's shell casings is circumstantial evidence establishing appellant fired at a close enough range from Robinson to justify attempted murder. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945 [substantial evidence supported attempted murder conviction where the defendant fired single shot from a .22-caliber rifle from second story balcony].)

Appellant, however, argues we should rely on Robinson's testimony regarding the distance of appellant's shots, i.e., approximately 30 yards away. Although the evidence was in conflict regarding the distance of appellant's shots, on appeal we view the evidence in the light most favorable to the judgment (*People v. Jones, supra,* 57 Cal.4th at p. 960) and presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment. (*People v. Johnson, supra,* 26 Cal.3d at p. 576.) Given the location of appellant's shell casings, appellant fired close enough to have inflicted a mortal wound had the shots been on target. (*Smith, supra,* 37 Cal.4th at p. 741.) Even if the evidence regarding the distance from which appellant fired could be interpreted more than one way, the circumstances reasonably justified the jury's finding so the judgment will not be reversed. (*People v. Abilez* (2007) 41 Cal.4th 472, 504 [opinion of reviewing court that circumstances might also reasonably be reconciled with a contrary finding of the jury does not warrant reversal of judgment].) When viewed in the light most favorable to the judgment, the evidence discredits appellant's argument he fired "from a fair distance away" and without an intent to kill while fleeing.

Further, appellant targeted Robinson when he pointed his gun directly at the officer and fired. It can be reasonably inferred appellant either desired Robinson's death or knew to a substantial certainty death would occur. (*Smith, supra,* 37 Cal. 4th at p. 739.) Because he targeted Robinson, appellant's arguments are unpersuasive that he did

not look at Robinson when he fired, did not stop and aim, or that Robinson was not in the line of fire. The trial evidence established appellant pointed the gun directly at Robinson, who could see a "perfectly round" muzzle flash. This evidence justifies the jury's verdict that appellant had an intent to kill.

Finally, appellant's reliance on *People v. Leon* (2010) 181 Cal.App.4th 452 (*Leon*) and *People v. Millbrook* (2014) 222 Cal.App.4th 1122 (*Millbrook*)[4] is misplaced.

In *Leon*, the defendant fired a single shot into the right taillight of a car that held three occupants. Once of the occupants was struck and killed. The defendant was convicted of one count of murder and two counts of attempted murder. (*Leon, supra,* 181 Cal.App.4th at pp. 456-458.) Two of the occupants were seated on the passenger side, with one occupying the front seat and the other the rear seat. The third occupant was the driver. (*Id.* at p. 457.) The shot went through the taillight and back seat, and killed the back seat passenger. (*Id.* at pp. 457-458.) *Leon* held the evidence was sufficient to support the finding of intent to kill the two victims seated on the passenger side of the vehicle, one behind the other, because they were in the defendant's line of fire, but the evidence was insufficient to show intent to kill the driver, who was not in the line of fire from the single shot. (*Id.* at pp. 465-466.) The *Leon* court noted it was "physically impossible" for the single bullet to strike the driver as well as the other two victims. (*Id.* at p. 465.)

---

**4** In his reply brief appellant raises *Millbrook* for the first time. *Millbrook* was published on January 8, 2014, after appellant filed his opening brief. As a general proposition, points raised after the opening brief will not be considered unless good cause is shown for failure to present them earlier. (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2; *People v. Jackson* (1981) 121 Cal.App.3d 862, 873.) Given *Millbrook*'s publication date, appellant has shown good cause. (*Meier v. Ross General Hospital* (1968) 69 Cal.2d 420, 423, fn. 1.)

27.

Here, substantial evidence establishes appellant pointed his handgun directly at Robinson and fired twice. This record does not demonstrate it was physically impossible for appellant's shots to strike Robinson. *Leon* is distinguishable.

In *Millbrook, supra,* 222 Cal.App.4th 1122, the defendant pointed a gun at the victim's chest and intentionally fired it from two feet away. (*Id.* at p. 1149.) The appellate court determined substantial evidence existed to establish the defendant's intent to kill for purposes of an attempted murder conviction. (*Id.* at pp. 1149-1150.) Appellant argues the present matter must be reversed because his facts are nothing like *Millbrook*. Appellant's contention is without merit because *Millbrook* did not limit its holding only to situations where the defendant fires from such a close range. Instead, the appellate court focused on the defendant's acts and the circumstances of the crime. (*Id.* at p. 1149.) Although appellant fired from a much greater distance away than in *Millbrook*, appellant's acts and the circumstances of the crime were sufficient to permit the jury to conclude he had the requisite express malice.

Finally, appellant fails to distinguish *Smith, supra,* 37 Cal.4th 733. In *Smith*, the defendant fired a single shot into the rear of a vehicle from a distance of one car's length away. Two victims were in the car and in the line of fire. The defendant was convicted of attempted murder of both victims despite firing a single shot. The *Smith* court upheld the defendant's conviction for attempted murder against a substantial evidence challenge. The *Smith* court emphasized that both victims were in the line of fire and the shot was discharged from close range. (*Id.* at p. 743.) Given the facts of this case, *Smith* supports affirming appellant's conviction for attempted murder because Robinson was in the line of fire and appellant purposefully discharged a lethal firearm sufficiently close to have inflicted a mortal wound had his shots not missed. (*Ibid.*)

Substantial evidence supports the jury's verdict that appellant had a specific intent to kill Robinson. This evidence was reasonable, credible, and of solid value such that a

reasonable jury could find appellant guilty beyond a reasonable doubt. (*People v. Jones, supra,* 57 Cal.4th at p. 960; *People v. Johnson, supra,* 26 Cal.3d at p. 576.)

### 2. Premeditation and deliberation.

Premeditation and deliberation exist when the attempted killing occurred as a result of preexisting reflection rather than an "unconsidered or rash impulse." (*Bolin, supra,* 18 Cal.4th at p. 332.) In the context of first degree murder, "'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.'" (*People v. Mayfield* (1997) 14 Cal.4th 668, 767, overruled on other grounds in *People v. Scott* (June 8, 2015, S64858) ___ Cal.4th ___ [2015 Cal.LEXIS 3903, p. 43, fn. 2].)

The Supreme Court utilizes three categories of evidence to resolve the issue of premeditation and deliberation: planning activity, motive, and manner of killing. (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) These factors do not require a "special combination" and they are not accorded any particular weight, but these factors are a guide for an appellate court to assess whether the evidence supports an inference that a killing or attempted killing occurred because of preexisting reflection. (*Bolin, supra,* 18 Cal.4th at pp. 331-332.) The appellate court will uphold an attempted murder verdict when there is (1) extremely strong evidence of planning, or (2) evidence of motive coupled with either (a) evidence of planning or (b) evidence of a manner of killing showing that the defendant must have had a preconceived design. (*People v. Bloyd* (1987) 43 Cal.3d 333, 348.)

While premeditation and deliberation do not require an extended period of time, the test is not the duration of time so much as the extent of reflection. (*People v. Bloyd, supra,* 43 Cal.3d at p. 348.) The essence of premeditation and deliberation is a cold calculated judgment rather than a rash impulse. (*People v. Cole* (2004) 33 Cal.4th 1158, 1224.) The Supreme Court has cautioned, however, that if "deliberation" and

29.

"premeditation" meant no more reflection than that involved in forming intent to kill, then there would be no distinction between attempted murder, and attempted premeditated and deliberate murder. (*People v. Anderson* (1968) 70 Cal.2d 15, 26.)

Here, substantial evidence established appellant had a motive to kill Robinson. Appellant was an active Oriental Troops gang member, and killing a law enforcement officer would bring notoriety to the gang. Appellant had time to plan when he refused to yield to Robinson and sped away with a loaded handgun in his vehicle. Appellant exited with his handgun drawn. This is circumstantial evidence appellant intended a violent encounter. (*People v. Lee* (2011) 51 Cal.4th 620, 636 [it is reasonable to infer a defendant considered the possibility of homicide from the beginning when he brings a deadly weapon and subsequently uses it]; *People v. Alcala* (1984) 36 Cal.3d 604, 626, abrogated by statute on other grounds as stated in *People v. Falsetta* (1999) 21 Cal.4th 903, 911.)

Although the record does not suggest appellant led Robinson on a long high speed pursuit, premeditation and deliberation do not require an extended period of time, and cold, calculated judgment can occur quickly. Moreover, appellant fired more than once, showing the manner of his shooting was purposeful.

The jury was given the opportunity to find appellant guilty of attempted voluntary manslaughter (heat of passion), which it rejected. Based on this record, the jury could have reasonably determined appellant acted with more than a rash outburst when he led Robinson on a high speed pursuit before stopping, exiting with a loaded handgun drawn and ready, and fired twice, even though he was also running away.

Appellant cites *People v. Boatman* (2013) 221 Cal.App.4th 1253 (*Boatman*)[5] in his reply brief as support there is insufficient evidence to find premeditation. The facts of *Boatman*, however, are very different from those presented here.

---

[5]    In his reply brief, appellant raises *Boatman* for the first time, noting *Boatman* was published after his opening brief was filed on November 22, 2013. *Boatman* was

In *Boatman,* the defendant shot his girlfriend in her face while they were in a bedroom of his family's home. (*Boatman, supra,* 221 Cal.App.4th at p. 1258.) There were other family members in the home at the time, but none of them witnessed the shooting. Immediately after the shooting, the defendant asked his brother to call the police and he attempted to give his girlfriend mouth-to-mouth resuscitation. (*Ibid.*)

The defendant gave different versions of what happened. He initially told officers his girlfriend accidentally shot herself. He then stated he accidentally shot her thinking the gun was not loaded. His final story was that he knew the gun was loaded and his girlfriend playfully pointed it at him, he slapped it away, and he then cocked back the hammer "'just jokingly'" and the gun fired after the hammer slipped. (*Boatman, supra,* 221 Cal.App.4th at p. 1259.) At trial, however, he testified she playfully pointed the gun at him and he took it and playfully pointed it back at her. While pointing it at her, he cocked back the hammer, and, when she slapped the gun, it discharged. (*Id.* at p. 1260.)

The *Boatman* court concluded there was no planning evidence presented. (*Boatman, supra,* 221 Cal.App.4th at p. 1267.) The court pointed out that there was "no evidence that defendant left the room or the house to get a gun, or that he even moved from his squatting position on the floor." (*Ibid.*) The court further reasoned the "behavior following the shooting [was] of someone horrified and distraught about what he had done, not someone who had just fulfilled a preconceived plan," noting the defendant tried to resuscitate his girlfriend, told his brother to call the police, and could be heard crying in the background during the 911 call. (*Ibid.*) The court concluded "[t]he evidence not only fails to support an inference of a plan to kill [his girlfriend], but strongly suggests *a lack* of a plan to kill." (*Ibid.*)

published on December 4, 2013. Given *Boatman*'s publication date, appellant has shown good cause for his failure to raise this authority earlier. (*Meier v. Ross General Hospital, supra,* 69 Cal.2d at p. 423, fn. 1.)

The *Boatman* court also found "little or no relevant motive evidence." (*Boatman, supra,* 221 Cal.App.4th at p. 1267.)  The only motive evidence was a text message from the victim to a friend, stating she was having a fight with the defendant.  The Attorney General relied on this to argue the jury may have inferred the defendant was "'in a bad mood after being released from custody and he was angry with [his girlfriend].'" (*Id.* at pp. 1267-1268.)

Here, unlike in *Boatman,* appellant had a gang related motive to kill Robinson, and he had time to premeditate and deliberate while fleeing from Robinson in his vehicle. Appellant exited his vehicle with his handgun drawn and fired it twice shortly thereafter. Unlike in *Boatman*, appellant's actions were those of someone who had fulfilled a preconceived plan.  *Boatman* is distinguishable and does not support reversal.

When the Supreme Court's three factors are analyzed, substantial evidence supports an inference the attempted killing occurred because of appellant's preexisting reflection.  (*Bolin, supra,* 18 Cal.4th at p. 332.)  This evidence was reasonable, credible, and of solid value such that a reasonable jury could find appellant intended to kill Robinson with premeditation and deliberation.  (*People v. Jones, supra,* 57 Cal.4th at p. 960.)  Accordingly, appellant's conviction in count 1 is affirmed.

## V.      Reversal Is Required For The Gang Enhancements.

Appellant asserts the evidence was insufficient to prove the gang enhancements under section 186.22, subdivision (b).

### A.      Standard of review.

The substantial evidence standard of review applies to gang enhancements and gang participation convictions.  (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329.)

To establish a gang enhancement, the prosecution must prove two elements: (1) the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).)  The crime

32.

must be "gang related." (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).) "Not every crime committed by gang members is related to a gang." (*Ibid*.) A defendant's mere membership in the gang does not suffice to establish a gang enhancement. (*People v. Gardeley* (1996) 14 Cal.4th 605, 623-624; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 (*Frank S.*).) Instead, the charged crime must have some connection with the activities of a gang. (*Frank S., supra*, at p. 1199; accord, *People v. Martinez* (2004) 116 Cal.App.4th 753, 762 [§ 186.30 context].)

In addition, the prosecution must prove "the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period." (*Gardeley, supra*, 14 Cal.4th at p. 617, italics omitted.)

The prosecution may rely on expert opinion testimony to prove the elements of the gang enhancement and establish whether the charged crime was gang related. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 (*Vang*); *Hernandez, supra,* 33 Cal.4th at pp. 1047-1048.) However, a gang expert's testimony, without any additional evidence in support, is insufficient to find that the charged offense was gang related. (*Ochoa, supra,* 179 Cal.App.4th at p. 657.) The expert testimony must be accompanied by some substantive factual evidentiary basis from which the jury could reasonably infer the crime was gang related. (*Id.* at p. 660 ["something more than an expert witness's unsubstantiated opinion that a crime was committed for the benefit of, at the direction of, or in association with any criminal street gang is required to justify a true finding on a gang enhancement"]; *Ramon, supra,* 175 Cal.App.4th at p. 852; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930-931.)

## B.    Analysis.

Appellant contends the evidence was insufficient to prove either that his crime was "gang related" or that he had the specific intent to promote, further, or assist gang members as required for conviction of the gang enhancement. He relies principally on *Ochoa, supra,* 179 Cal.App.4th 650, which we find persuasive.

In *Ochoa*, the defendant was charged with carjacking and a felon in possession of a firearm. He challenged the sufficiency of the evidence supporting a gang enhancement under section 186.22, subdivision (b)(1). The defendant, who was a gang member, acted alone in committing a carjacking with a shotgun, and the offense did not occur in his gang's territory. (*Ochoa, supra,* 179 Cal.App.4th at p. 662.) *Ochoa* found the evidence insufficient to sustain the gang-related prong of section 186.22, subdivision (b)(1), noting the circumstances of the crime did not support the opinion testimony of the prosecution's gang expert that the crimes were gang related. (*Ochoa, supra,* at pp. 661-662.)

In reaching its conclusion, the *Ochoa* court noted there was no evidence only gang members committed carjackings or a gang member could not commit one for personal reasons. (*Ochoa, supra,* 179 Cal.App.4th at p. 662.) Two witnesses for the prosecution testified that gang members can commit crimes on their own without benefitting the gang. (*Ibid.*) The *Ochoa* court discounted the gang expert's testimony that a gang member's carjacking would always benefit the gang. This testimony improperly informed the jury how the expert believed the case should be decided without any underlying factual basis to support it. (*Ibid.*) Notably, the *Ochoa* defendant did not call out a gang name, did not display gang signs, did not wear gang clothing and did not engage in gang graffiti while committing the carjacking. There was no evidence of bragging or graffiti after the fact to take credit for the crime. There was no testimony the victim saw any of the defendant's tattoos. There was no evidence the crimes occurred in the defendant's gang territory, the territory of a rival, or that the victim was a gang member. There was no evidence the defendant was given gang permission, or instructed,

34.

to commit the carjacking. The defendant committed his crime without another gang member present. There was no indication the defendant used the stolen vehicle to transport other gang members or drugs, or had an intention to do so. (*Id.* at pp. 662-663.)

Based on its record, the *Ochoa* court determined the gang expert had no specific evidentiary support when he opined the carjacking could benefit the defendant's gang in a number of ways. Instead, *Ochoa* held such testimony was based solely on speculation, which was insufficient to affirm a conviction. (*Id.* at p. 663.)

Here, appellant's circumstances mirror those of *Ochoa*. Appellant did not call out a gang name, did not display gang signs, and was not wearing visible gang clothing when he engaged Robinson. This record does not demonstrate evidence of bragging or graffiti after the fact taking credit for appellant's crime. There was no testimony that appellant's tattoos were visible to Robinson. To the contrary, Robinson testified appellant wore a black hooded sweatshirt, with the hood up, and black pants. Robinson could only see a partial side of appellant's face.

There was no evidence appellant engaged Robinson in appellant's, or a rival's, gang territory. There was no evidence appellant was given gang permission, or instructed, to commit the crimes. Appellant committed his crime without another gang member present.

As in *Ochoa*, the gang expert here, Ford, opined that appellant's crime was committed for the benefit of and in association of a criminal street gang. Ford believed appellant's crime would establish respect for his gang in general and respect for appellant within his gang. He also opined that appellant was "a walking billboard as to what the Oriental Troops are and what they are doing." The facts, however, do not support Ford's opinion testimony because appellant did not do anything during his encounter with Robinson to suggest he was a gang member. Ford's testimony effectively told the jury that a crime like appellant's would always be for the benefit of the gang, but his opinion testimony did nothing more than inform the jury how he believed the case should be

35.

resolved. (*Ochoa, supra,* 179 Cal.App.4th at p. 662.) Ford's testimony was based solely on speculation. (*Id.* at pp. 662-663.) *Ochoa* is not distinguishable from the present matter and it controls.

Respondent, however, contends it is questionable whether *Ochoa*'s rationale is still good law in light of our Supreme Court's opinion in *Vang, supra,* 52 Cal.4th 1038. *Vang* held that "'[e]xpert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement." (*Id.* at p. 1048.) *Vang* analyzed whether the trial court erred in permitting the prosecution's gang expert to respond to hypothetical questions the prosecutor asked which closely tracked the evidence in a manner that was only thinly disguised. (*Id.* at p. 1041.)

In *Vang*, the four defendants were convicted of assault by means of force likely to produce great bodily injury after they attacked an individual who was once associated with the gang. At trial, three of the defendants admitted they were members in a criminal street gang. Based on two hypotheticals that closely tracked the evidence in the case, the prosecution's gang expert opined the assault was committed for the benefit of a gang and it was gang motivated. (*Vang, supra,* 52 Cal.4th at p. 1043.) The jury found true the gang enhancement allegations under section 186.22, subdivision (b)(1). (*Vang, supra,* at p. 1041.)

The *Vang* expert relied on three factors in determining the assaults were gang motivated: (1) the victim had associated with gang members at one time; (2) the victim was lured to the spot where the attack occurred; and (3) known documented gang members worked together to attack the victim. (*Vang, supra,* 52 Cal.4th at p. 1043.) On appeal, the defendants argued the trial court erred when it allowed the expert to testify based on the "'thinly disguised'" hypothetical that the attack was committed for the benefit of the gang and was gang motivated. (*Id.* at p. 1044.) The Supreme Court disagreed and held that an expert may express an opinion based on hypothetical questions

that track the evidence in the trial regarding whether the defendant committed a crime for a gang purpose. (*Id*. at p. 1048.) *Vang* noted that hypothetical questions must be based on the evidence and that fact need not be disguised. (*Id*. at p. 1041.) The *Vang* court held "'[e]xpert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the . . . gang enhancement." (*Id*. at p. 1048, quoting *Albillar*, *supra*, 51 Cal.4th at p. 63.) However, the *Vang* court also stated that the expert's opinion, "if found credible, might, *together with the rest of the evidence*, cause the jury to find the assault was gang related." (*Vang, supra,* at p. 1048, italics added.)

Here, *Vang* does not alter our conclusion *Ochoa* requires reversal of appellant's convictions for the gang enhancement. *Vang* did not address whether a gang expert's testimony, without more, was sufficient to establish a gang enhancement. As this court has observed, "[a] case is not authority for a proposition it did not consider." (*Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 685.) Moreover, *Vang* expressly stated that while the gang expert's testimony is permissible and can be sufficient to support the gang enhancement, the expert's opinion, *together with the rest of the evidence*, might cause the jury to find the crime was gang related. (*Vang, supra,* 52 Cal.4th at p. 1048.) *Vang* has not rendered *Ochoa*'s rationale questionable or no longer good law.

Moreover, other cases stand with *Ochoa*. In *People v. Rios* (2013) 222 Cal.App.4th 542 (*Rios*) the appellate court reversed, inter alia, the defendant's gang enhancement convictions stemming from charges of vehicle theft and carrying a loaded firearm in a vehicle after a review of the evidence failed to establish a gang connection other than the expert's opinion testimony. The *Rios* court noted that while the prosecution may rely on the charged offense as the criminal conduct that supports a gang enhancement when the defendant acts in concert with others, when the defendant acts alone (which occurred in *Rios*), "the combination of the charged offense and gang membership alone is insufficient to support an inference on the specific intent prong of

the gang enhancement.  Otherwise, the gang enhancement would be used merely to punish gang membership." (*Id.* at pp. 573-574.)

In *Ramon, supra,* 175 Cal.App.4th 843, this court addressed the sufficiency of the evidence to support the specific intent prong of a gang enhancement. The defendant in *Ramon*, a gang member, was stopped by police in his gang's territory while driving a stolen truck.  A fellow gang member was in the truck, and police found an unregistered firearm under the driver's seat. (*Id.* at pp. 846–847.)  The defendant was convicted of three firearm offenses and receiving a stolen vehicle; the jury also found true the gang enhancement allegations on three counts. (*Id.* at p. 848.)  At trial, a gang expert testified the stolen truck and the unregistered firearm could be used to commit gang crimes. (*Id.* at p. 847.)  He opined possessing a gun and driving a stolen truck in gang territory benefitted the gang and the perpetrators of these offenses would intend to promote the gang. (*Id.* at p. 848.)  The expert testified stolen trucks and firearms were "tools" the gang needed to commit other crimes. (*Ibid.*)

On appeal, the defendant in *Ramon* argued the facts of his offenses plus the fact of his gang membership and presence in gang territory were insufficient to support the expert's opinion on benefit and intent. (*Ramon, supra*, 175 Cal.App.4th at pp. 849–851.) This court agreed, stating, "The People's expert simply informed the jury of how he felt the case should be resolved.  This was an improper opinion and could not provide substantial evidence to support the jury's finding.  There were no facts from which the expert could discern whether Ramon and Martinez were acting on their own behalf the night they were arrested or were acting on behalf of [their gang].  While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation.  Speculation is not substantial evidence. [Citation.]" (*Id.* at p. 851.)  This court also held that the "facts on which [the gang expert] based his testimony were insufficient to permit him to construct an opinion about Ramon's specific intent . . . ." (*Id.* at p. 852.) This court reasoned that the prosecution's expert opinion was a possibility,

it was not the only possibility and "a mere possibility is not sufficient to support a verdict." (*Id*. at p. 853.) This court noted that no case stands for the proposition expert testimony about a possible reason for committing a crime was sufficient, by itself, to justify a gang enhancement. (*Ibid*.)

Finally, in *Frank S*., *supra,* 141 Cal.App.4th 1192, an officer detained the minor when he failed to stop at a red traffic light while riding his bicycle. The officer discovered a knife, a bindle of methamphetamine, and a red bandana on the minor. The People charged the minor with carrying a concealed dirk coupled with a gang enhancement, as well as other charges. (*Id*. at p. 1195.) The prosecution's gang expert testified the minor was a gang member and the substantive offense was committed to benefit his gang. She testified "a gang member would use the knife for protection from rival gang members and to assault rival gangs." (*Ibid*.)

The appellate court reversed the enhancement, finding that "nothing besides weak inferences and hypotheticals show the minor had a gang-related purpose for the knife." (*Frank S., supra*, 141 Cal.App.4th at p. 1199.) "[U]nlike in other cases, the prosecution presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was 'committed for the benefit of, at the direction of, or in association with any criminal street gang . . . .' [Citation.] The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended." (*Ibid*.)

The authorities discussed above establish appellant's convictions for the gang enhancements associated with counts 1 and 2 must be reversed. There is insufficient evidence to establish appellant's charged crimes in counts 1 and 2 were either gang related (*Ochoa, supra,* 179 Cal.App.4th at p. 663), or appellant had the specific intent to promote, further, or assist gang members (*Rios, supra,* 222 Cal.App.4th at pp. 574-575; *Ramon, supra,* 175 Cal.App.4th at p. 853). Accordingly, we reverse the enhancements pursuant to section 186.22, subdivision (b)(1) on counts 1 and 2.[6]

## VI. Count 4 Must Be Reduced To A Misdemeanor Due To Insufficient Evidence.

Appellant asserts the evidence is legally insufficient to support his felony conviction in count 4 that he carried a loaded firearm (former § 12031, subd. (a)(1) [misdemeanor carrying a loaded firearm]) while an active participant in a street gang (former § 12031, subd. (a)(2)(C) [punished as a felony when the person is an active participant in a gang under § 186.22, subd. (a)(1)]).[7] He relies on *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*).

Respondent concedes *Rodriguez* establishes the evidence is insufficient to support a conviction under section 186.22, subdivision (a). Respondent, however, argues the evidence is sufficient to support appellant's conviction under former section 12031, subdivision (a)(1), requiring count 4 to be reduced to a misdemeanor. Appellant agrees.

We appreciate the parties' concessions and accept them as appropriate in light of *Rodriguez* and the evidence in this record.

---

**6**    In light of the reversal of the enhancements under section 186.22, subdivision (b), we will not address appellant's arguments he was improperly sentenced under section 186.22, subdivision (b)(1)(C).

**7**    Former section 12031 was repealed in 2010, operative January 1, 2012. (Stats. 2010, ch. 711, § 4 (SB 1080)) and reenacted without substantive change as section 25850. Former section 12031 was in effect as of the date of appellant's charged crimes (March 3, 2011) as alleged in the first amended information.

In *Rodriguez*, our Supreme Court held a gang member does not violate section 186.22, subdivision (a), if he commits a felony but acts alone. (*Rodriguez, supra,* 55 Cal.4th at p. 1139.) Here, appellant acted alone when he carried a loaded handgun and engaged Robinson. As such, substantial evidence supports the jury's verdict that appellant violated former section 12031, subdivision (a)(1), a misdemeanor. However, pursuant to *Rodriguez*, there is legally insufficient evidence to satisfy section 186.22, subdivision (a). Thus, appellant is not eligible for felony punishment under former section 12031, subdivision (a)(2)(C). Accordingly, we reduce the felony to a misdemeanor in violation of former section 12031, subdivision (a)(1) and remand for appropriate resentencing.

## VII. Independent Review Of The Sealed Record Pertaining To The *Pitchess* Proceedings Reveals No Procedural Error Or Abuse Of Discretion.

Appellant requests we independently review the propriety of the trial court's ruling regarding his motion filed pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Respondent does not object.

### A.     Background.

On October 21, 2011, appellant filed a *Pitchess* motion to permit discovery and disclosure of Robinson's personnel records. Appellant requested any records pertaining to reports of alleged dishonesty, planting of evidence, giving of false and misleading testimony, writing of false and/or misleading investigation reports, or the use of excessive force, including that from a firearm.

On November 15, 2011, the trial court granted appellant's *Pitchess* motion and conducted an in camera review of Robinson's personnel records. Following the in camera review, the court made the following nonconfidential ruling: "I have met in camera and have thoroughly reviewed each and every file maintained by the City, the custodian of the records of the City of Lindsay with respect to Officer Robinson and there is [*sic*] absolutely no documents whatsoever that could be characterized as related to the

41.

issues that you have raised, [appellant's counsel]. And so there is no, going to be no obligation on behalf of [city's counsel] to disclose information to you."

On April 28, 2015, this court ordered the trial court to provide the files which it reviewed at the in camera hearing on November 15, 2011, pursuant to appellant's *Pitchess* motion.

On May 29, 2015, the trial court conducted a hearing regarding verification of the records associated with appellant's *Pitchess* motion. The same custodian of records was present at both the November 15, 2011, and May 29, 2015, hearings. During the May 29, 2015, hearing, the trial court indicated it had not maintained a copy of Robinson's personnel records associated with the November 15, 2011, in camera review. Under oath, the custodian stated she had Robinson's complete personnel file, including each and every document presented to the trial court on November 15, 2011. No documents had been taken out or deleted from Robinson's personnel file following the November 15, 2011, in camera review. The custodian placed the entirety of Robinson's personnel file in electronic form on a CD, which the trial court ordered sealed and it was forwarded to this court for review.

### B. Standard of review.

"'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' [Citation.]" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180 (*Yearwood*).) "A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both "'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." [Citation.]' [Citation.]" (*Ibid.*)

### C. Analysis.

We have reviewed the trial court's in camera examination of Robinson's personnel file. The trial court complied with the procedural requirements of a *Pitchess* hearing. A court reporter was present and the custodian of records was sworn prior to testifying. (*Yearwood, supra,* 213 Cal.App.4th at p. 180.) The custodian of records complied with the requirement to bring all the records and submit them for review by the court. (*Ibid.*)

Upon review of the sealed personnel file, we do not see any materials "'so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion.' [Citation.]" (*Yearwood, supra,* 213 Cal.App.4th at pp. 180-181.) An abuse of judicial discretion is lacking. (*Id.* at p. 181.)

## DISPOSITION

The Penal Code section 186.22, subdivision (b)(1) enhancements on counts 1 and 2 are reversed.

The conviction on count 4 is reduced to a misdemeanor violation of former Penal Code section 12031, subdivision (a)(1).

The remaining convictions are affirmed. The matter is remanded to the trial court for resentencing.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
DETJEN, J.

43.